ARCADIA, OHIO, ET AL. *v.* OHIO POWER CO. ET AL.

No. 89–1283.   Argued October 1, 1990—Decided November 27, 1990

SCALIA, J., delivered the opinion of the Court, in which all other Members joined, except SOUTER, J., who took no part in the consideration or decision of the case. STEVENS, J., filed a concurring opinion, in which MARSHALL, J., joined, *post*, p. 86.

*Carter G. Phillips* argued the cause for petitioners. With him on the briefs were *Rex E. Lee, Gregg D. Ottinger,* and *John P. Williams.*

*Deputy Solicitor General Wallace* argued the cause for the Federal Energy Regulatory Commission, as respondent under this Court's Rule 12.2, in support of petitioners. With him on the joint briefs for this respondent and for the Securities and Exchange Commission urging reversal were *Acting Solicitor General Roberts, James A. Feldman, William S. Scherman, Jerome M. Feit, Joseph S. Davies, Timm L. Abendroth,* and *Daniel L. Goelzer.*

*Edward Berlin* argued the cause for respondents. With him on the brief for respondent Ohio Power Co. were *Kenneth G. Jaffe, A. Joseph Dowd, John F. DiLorenzo, Jr.,*

and *Edward J. Brady. T. D. Kauffelt* filed a brief for respondents LCP Chemicals, Inc., et al.*

JUSTICE SCALIA delivered the opinion of the Court.

This case concerns the interpretation of § 318 of the Federal Power Act, as added, 49 Stat. 863, 16 U. S. C. § 825q, entitled "Conflict of jurisdiction," which governs certain overlapping responsibilities of the Federal Energy Regulatory Commission (FERC) and the Securities and Exchange Commission (SEC) in the regulation of power companies under the Public Utility Act of 1935, 49 Stat. 803.

I

The Public Utility Act subjects some companies that transmit and distribute electric power to overlapping regulatory jurisdiction of the SEC and FERC, successor to the Federal Power Commission (FPC). Title I, known as the Public Utility Holding Company Act (PUHCA), 49 Stat. 803, gives the SEC jurisdiction over certain transactions among registered public utility holding companies and their subsidiaries and affiliates. Title II, the Federal Power Act (FPA), 49 Stat. 838, gives FERC jurisdiction over the transmission and sale at wholesale of electric power in interstate commerce. FERC-regulated electric power companies that are subsidiaries or affiliates of registered public utility holding companies are therefore subject to SEC regulation as well. Respondent Ohio Power Company, part of the American Electric Power system (AEP), is one such company; petitioners are 15 small Ohio villages and cities that are AEP's wholesale customers.

The dispute in this case begins in a series of orders issued by the SEC in the 1970's, authorizing Ohio Power to establish

---

*Briefs of *amici curiae* urging reversal were filed for the American Public Power Association et al. by *Scott Hempling;* and for the Indiana Municipal Power Agency by *James N. Horwood.*

*James B. Liberman* filed a brief for the Registered Holding Co. Group as *amicus curiae* urging affirmance.

and capitalize an affiliate, Southern Ohio Coal Company (SOCCO), to secure and develop a reliable source of coal for the whole AEP system. The first order, in 1971, approved the sale and purchase of SOCCO's stock, and in the course of outlining the conditions of that approval, stated that SOCCO's charges for coal would be "based on" actual costs. *Ohio Power Co.*, SEC Holding Company Act Release (HCAR) No. 17383 (Dec. 2, 1971). In 1978, the SEC authorized further investment by Ohio Power, and this time its order indicated that the price of coal "will not exceed the cost thereof to the seller." *Ohio Power Co.*, HCAR No. 20515 (Apr. 24, 1978), 14 S. E. C. Docket 928, 929. In 1979, in the course of another financing approval order, the SEC noted that Ohio Power would pay SOCCO less than the actual cost of coal if Ohio Power's after-tax capital costs exceeded a certain level. *Southern Ohio Coal Co.*, HCAR No. 21008 (Apr. 17, 1979). The final order in 1980, approving further SOCCO financing, indicated that "[t]he price at which SOC[C]O's coal will be sold to AEP system companies will not exceed the cost thereof to the seller." *Southern Ohio Coal Co.*, HCAR No. 21537 (Apr. 25, 1980).

In 1982, Ohio Power filed rate increases for its wholesale service. FERC initiated a rate proceeding under §§ 205 and 206 of the FPA, 16 U. S. C. §§ 824d, 824e, and quickly settled all issues save the reasonableness of Ohio Power's SOCCO coal costs. Pursuant to § 206 of the FPA, FERC disallowed that portion of Ohio Power's coal costs that did not satisfy FERC's "comparable market" test. Under this test, utilities that purchase coal from affiliates may recover only the price that they would have incurred had they purchased coal under a comparable coal supply contract with a nonaffiliated supplier. In Ohio Power's case, FERC found that Ohio Power had paid approximately 50% more than that market price in 1980, approximately 94% more in 1981, and between 24% and 33% more during the period 1982 through 1986. Accordingly, FERC ordered Ohio Power to establish rates

calculated to recover from its customers no more than the comparable market price for coal, and to refund prior overcharges. The agency rejected Ohio Power's argument that the SEC, by the above-mentioned orders, had "approved" the coal charges by SOCCO, and that § 318 of the FPA ousts FERC of jurisdiction to regulate the same "subject matter" by declaring those charges unreasonable and thus unrecoverable in Ohio Power's wholesale rates. *Ohio Power Co.*, 39 FERC ¶ 61,098 (1987).

The United States Court of Appeals for the District of Columbia Circuit reversed, holding FERC's disallowance of the charges to be precluded by § 318. *Ohio Power Co.* v. *FERC,* 279 U. S. App. D. C. 327, 880 F. 2d 1400 (1989). We granted certiorari. 494 U. S. 1055 (1990).

## II

As decided by the Court of Appeals, and as argued here, two questions were presented in this case: (1) whether § 318 bars all FERC regulation of a subject matter regulated by the SEC, or only such regulation as actually imposes a conflicting requirement; and (2) if an actual conflict is prerequisite, whether it exists here. In our view, however, there is another question antecedent to these and ultimately dispositive of the present dispute: whether the SEC and FERC orders before us impose requirements with respect to a subject matter that is within the scope of § 318. We believe they do not.

Section 318 provides as follows:

> "Conflict of jurisdiction
> "If, with respect to the issue, sale, or guaranty of a security, or assumption of obligation or liability in respect of a security, the method of keeping accounts, the filing of reports, or the acquisition or disposition of any security, capital assets, facilities, *or any other subject matter*, any person is subject both to a requirement of the Public Utility Holding Company Act of 1935 or of a rule,

> regulation, or order thereunder and to a requirement of this chapter or of a rule, regulation, or order thereunder, the requirement of the Public Utility Holding Company Act of 1935 shall apply to such person, and such person shall not be subject to the requirement of this chapter, or of any rule, regulation, or order thereunder, with respect to the same subject matter, unless the Securities and Exchange Commission has exempted such person from such requirement of the Public Utility Holding Company Act of 1935, in which case the requirements of this chapter shall apply to such person." (Emphasis added.)

Crucial to the outcome of the present case is the lengthy conditional clause that begins this section, setting forth a list of subjects "with respect to [which]" duplicative requirements will trigger the pre-emption rule. More specifically, the key to the outcome is the phrase "or any other subject matter," which we have italicized in the above passage. The Court of Appeals appears to have assumed that it parallels the other phrases setting forth various objects of the prepositional phrase "with respect to." We do not think it reasonably bears that interpretation.

To begin with, that interpretation renders the preceding enumeration of specific subjects entirely superfluous — in effect adding to that detailed list "or anything else." Because the other four categories of enumeration are so disparate, the canon of *ejusdem generis* cannot be invoked to prevent the phrase "or any other subject matter" from swallowing what precedes it, leaving a statute that might as well have read "If, with respect to any subject matter . . . ." Such an interpretation should not be adopted unless the language renders it unavoidable. Here, however, the text not only does not compel that result but positively militates against it.

As the Court of Appeals read § 318, the conditional clause lists five separate areas of duplicative requirements. Bracketed numbers inserted into the text would appear as follows:

"If, with respect to [1] the issue, sale, or guaranty of a security, or assumption of obligation or liability in respect of a security, [2] the method of keeping accounts, [3] the filing of reports, or [4] the acquisition or disposition of any security, capital assets, facilities, or [5] any other subject matter . . . ."

This reading, however, creates two problems of enumeration: First, it renders the "or" that introduces the fourth category duplicative ("If, with respect to [1], [2], [3], *or* [4], *or* [5]"), and second, it produces the peculiar omission of an "or" before the last item listed within the text of the fourth category ("the acquisition or disposition of any security, capital assets, facilities"). In casual conversation, perhaps, such absent-minded duplication and omission are possible, but Congress is not presumed to draft its laws that way. The attribution of such imprecision is readily avoided by placing the phrase "or any other subject matter" within the fourth enumeration clause, reading that to embrace "[4] the acquisition or disposition of any security, capital assets, facilities, or any other subject matter." It is inelegant, perhaps, to refer to "the acquisition or disposition of . . . [a] subject matter," but that inelegance must be preferred to a reading that introduces both redundancy and omission, and that renders the section's careful enumeration of subjects superfluous.

Moreover, and most importantly, when § 318 is read in this fashion it takes on a shape that gives meaning to what otherwise seems a random listing of specific subject matters (with "any other subject matter" tagged on at the end). So interpreted, it addresses (as its caption promises) the "Conflict of jurisdiction" within four areas of plainly parallel authority granted both to the SEC, under PUHCA, and to the FPC (FERC), under the FPA. The first category, "the issue, sale, or guaranty of a security, or assumption of obligation or liability in respect of a security," refers to § 204 of the FPA, 16 U. S. C. § 824c, which requires all such transactions to be approved by FERC order, and to § 6 of PUHCA, 15 U. S. C.

§ 79f, which in certain cases requires similar approval by the SEC; the second, "the method of keeping accounts," refers to § 301, 16 U. S. C. § 825, which authorizes FERC to prescribe accounts and records, and to § 15, 15 U. S. C. § 79o, which similarly authorizes the SEC; the third, "the filing of reports," refers to § 304, 16 U. S. C. § 825c, which authorizes FERC to require "periodic or special reports," and § 14, 15 U. S. C. § 79n, which similarly empowers the SEC; and the fourth, "the acquisition or disposition of any security, capital assets, facilities, or any other subject matter" refers to § 203, 16 U. S. C. § 824b, which requires all purchases of securities of other public utilities, and all sales of facilities worth more than $50,000, to be approved by FERC order, and to § 9, 15 U. S. C. § 79i, which requires SEC approval of acquisitions of "securities and utility assets and other interests." The language of § 318 does not track precisely the language of any of these other sections, but the PUHCA and FPA sections making up each of the four sets are not themselves precisely parallel, so that some alternative formulation to bridge the gap would be expected.

Our reading is confirmed by longtime understanding and practice. An expert commentary upon the specific topic of overlapping SEC and FPC jurisdiction, written about 10 years after passage of the Public Utility Act, assumed as we have that § 318 implicated only the four FPC sections that we have identified. See Welch, Functions of the Federal Power Commission in Relation to the Securities and Exchange Commission, 14 Geo. Wash. L. Rev. 81, 88 (1945). And as far as we have been able to determine, in 50 years of administering the FPA, FERC and its predecessor, the FPC, have never decided an issue under § 318 except in connection with orders promulgated under those four sections.[1] Never before this

---

[1] The vast majority of these were orders under § 203, in connection with ultilities' requests for approval of merger or of disposition of assets. See *Florida Power Corp.*, 2 FERC ¶ 61,038, p. 61,092 (1978); *Potomac Edison Co.*, 54 F. P. C. 1465, 1466 (1975); *Union Light, Heat & Power Co.*, 39

case has § 318 been used as a general conflicts provision, policing the entire regulatory border between the two agencies.[2]

F. P. C. 277, 279 (1968); *Buckeye Power, Inc.*, 38 F. P. C. 519, 520 (1967); *Buckeye Power, Inc.*, 38 F. P. C. 253, 259 (1967); *Minnesota Power & Light Co.*, 37 F. P. C. 1059, 1060–1061 (1967); *Arkansas Power & Light Co.*, 35 F. P. C. 341 (1966); *Orange & Rockland Utilities, Inc.*, 34 F. P. C. 107, 108 (1965); *Public Service Co. of New Hampshire*, 34 F. P. C. 17, 20 (1965); *Arkansas Power & Light Co.*, 32 F. P. C. 1537, 1539 (1964); *Pennsylvania Power & Light Co.*, 32 F. P. C. 1263, 1265 (1964); *Kentucky Utilities Co.*, 32 F. P. C. 622, 623 (1964); *South Carolina Electric & Gas Co.*, 29 F. P. C. 1045, 1048 (1963); *Philadelphia Electric Co.*, 28 F. P. C. 1025, 1027 (1962); *Arkansas Power & Light Co.*, 28 F. P. C. 844, 846 (1962); *Pennsylvania Electric Co.*, 27 F. P. C. 81, 84 (1962); *Cincinnati Gas & Electric Co.*, 25 F. P. C. 1195, 1196 (1961); *Arkansas Power & Light Co.*, 25 F. P. C. 1151, 1152 (1961); *Alabama Power Co.*, 25 F. P. C. 1018, 1020 (1961); *Northern States Power Co.*, 25 F. P. C. 974, 977 (1961); *Central Vermont Public Service Corp.*, 25 F. P. C. 146, 149 (1961); *Northern States Power Co.*, 24 F. P. C. 457, 460 (1960); *Commonwealth Edison Co.*, 24 F. P. C. 94, 96 (1960); *Minnesota Power & Light Co.*, 23 F. P. C. 868, 869 (1960); *Mississippi Valley Public Service Co.*, 23 F. P. C. 104, 108 (1960); *Central Vermont Public Service Corp.*, 22 F. P. C. 737, 739 (1959); *Arkansas Power & Light Co.*, 22 F. P. C. 457, 458 (1959); *Northern States Power Co.*, 21 F. P. C. 780, 782 (1959); *Conowingo Power Co.*, 21 F. P. C. 511, 513–514 (1959); *Philadelphia Electric Power Co.*, 21 F. P. C. 157, 160 (1959); *Wisconsin Michigan Power Co.*, 20 F. P. C. 358, 360 (1958); *Northern States Power Co.*, 20 F. P. C. 355, 357 (1958); *Orange & Rockland Utilities, Inc.*, 20 F. P. C. 205, 206–207 (1958); *Orange & Rockland Electric Co.*, 19 F. P. C. 269, 276 (1958); *Pacific Gas & Electric Co.*, 18 F. P. C. 827, 829 (1957); *Northern States Power Co.*, 18 F. P. C. 532, 536–537 (1957); *Pennsylvania Power & Light Co.*, 18 F. P. C. 525, 528 (1957); *Northern States Power Co.*, 18 F. P. C. 395, 397 (1957); *Northern States Power Co.*, 18 F. P. C. 135, 137 (1957); *Kentucky Utilities Co.*, 18 F. P. C. 44, 46 (1957); *Amesbury Electric Light Co.*, 18 F. P. C. 1 (1957); *Nantahala Power & Light Co.*, 17 F. P. C. 899, 901 (1957); *Cincinnati Gas & Electric Co.*, 17 F. P. C. 669, 670 (1957); *Northern States Power Co.*, 17 F. P. C. 639, 641 (1957); *Georgia Power & Light Co.*, 17 F. P. C. 324, 327 (1957); *Northern States Power Co.*, 16 F. P. C. 876, 880 (1956); *Scranton Electric Co.*, 15 F. P. C. 1078, 1081 (1956); *St. Joseph Light & Power Co.*, 14 F. P. C. 985 (1955); *Frontier Power Co.*, 14 F. P. C. 941, 944

It is not necessarily true that § 318 gives the SEC precedence only when the specific sections that we have referred to are the jurisdictional basis for both the FERC and the

---

(1955); *Carolina Aluminum Co.*, 14 F. P. C. 829, 830 (1955); *Baltimore Gas & Electric Co.*, 14 F. P. C. 821, 822 (1955); *Pennsylvania Water & Power Co.*, 14 F. P. C. 706, 711 (1955); *Cincinnati Gas & Electric Co.*, 14 F. P. C. 639, 641 (1955); *Connecticut River Power Co.*, 14 F. P. C. 501, 503 (1955); *Pacific Gas & Electric Co.*, 13 F. P. C. 1563, 1564 (1954); *Pacific Gas & Electric Co.*, 13 F. P. C. 1334, 1335 (1954); *Rockland Light & Power Co.*, 13 F. P. C. 1300, 1302 (1954); *Kentucky Utilities Co.*, 13 F. P. C. 907, 908 (1954); *West Penn Power Co.*, 13 F. P. C. 866, 868 (1954); *Ohio Edison Co.*, 12 F. P. C. 1437, 1438 (1953); *Lake Superior District Power Co.*, 12 F. P. C. 1434, 1435 (1953); *Wisconsin Power & Light Co.*, 12 F. P. C. 1394, 1395–1396 (1953); *Wisconsin Michigan Power Co.*, 12 F. P. C. 1318, 1319 (1953); *Louisiana Power & Light Co.*, 12 F. P. C. 1168, 1169 (1953); *Kansas City Power & Light Co.*, 11 F. P. C. 1112, 1113 (1952); *Kansas Gas & Electric Co.*, 11 F. P. C. 1114, 1115–1116 (1952); *Potomac Light & Power Co.*, 11 F. P. C. 1069, 1070 (1952); *South Penn Power Co.*, 11 F. P. C. 1070, 1071 (1952); *Missouri Public Service Co.*, 10 F. P. C. 1120, 1122 (1951); *Athol Gas & Electric Co.*, 10 F. P. C. 729, 731 (1951); *Pennsylvania Electric Co.*, 9 F. P. C. 1304, 1306 (1950); *Rhode Island Power Transmission Co.*, 9 F. P. C. 942, 944 (1950); *Wisconsin Power & Light Co.*, 9 F. P. C. 859, 861 (1950); *Northwestern Illinois Gas & Electric Co.*, 9 F. P. C. 862, 863–864 (1950); *Indiana & Michigan Electric Co.*, 9 F. P. C. 617, 619 (1950); *Potomac Electric Power Co.*, 8 F. P. C. 997 (1949); *Bellows Falls Hydro-Electric Corp.*, 7 F. P. C. 777, 780 (1948); *Pennsylvania Power & Light Co.*, 6 F. P. C. 428, 429 (1947); *Northern Virginia Power Co.*, 5 F. P. C. 458, 459 (1946); *Central Vermont Public Service Corp.*, 4 F. P. C. 1001, 1002 (1945); *Worcester Suburban Electric Co.*, 4 F. P. C. 929, 930–931 (1945); *Wachusett Electric Co.*, 4 F. P. C. 920, 921 (1945); *California Public Service Co.*, 4 F. P. C. 812, 814 (1944); *Utah Power & Light Co.*, 4 F. P. C. 791, 792 (1944); *Indiana General Service Co.*, 4 F. P. C. 783, 785 (1944); *Empire District Electric Co.*, 4 F. P. C. 665, 669 (1944); *Virginia Electric & Power Co.*, 4 F. P. C. 51, 53–54 (1944); *Eastern Shore Public Service Co.*, 4 F. P. C. 382, 384 (1943); *Otter Tail Power Co.*, 3 F. P. C. 1054, 1056 (1943); *Superior Water, Light & Power Co.*, 3 F. P. C. 960, 962 (1943); *Cincinnati Gas & Electric Co.*, 3 F. P. C. 883, 885 (1942); *Point Pleasant Water & Light Co.*, 3 F. P. C. 755, 757 (1942); *Eastern Shore Public Service Co.*, 3 F. P. C. 723, 724 (1942); *Florida Power Co.*, 3 F. P. C. 719 (1942); *Virginia Public Service Co.*, 3 F. P. C. 704, 706 (1942); *Associated Maryland Electric Power Corp.*, 3

SEC action—as they are not, of course, here. But the text of the section, as we have explicated it above, does require that the "same subject matter" as to which the duplicative re-

F. P. C. 646, 652 (1942); *Montana-Dakota Utilities Co.*, 3 F. P. C. 629, 631 (1942); *In re Pennsylvania Electric Co.*, 3 F. P. C. 544, 546 (1943); *In re Pennsylvania Electric Co.*, 3 F. P. C. 557, 558 (1943); *In re Olcott Falls Co.*, 3 F. P. C. 310, 312 (1942); *South Carolina Electric & Gas Co.*, 3 F. P. C. 1007, 1011 (1943); *Otter Tail Power Co.*, 2 F. P. C. 935, 936 (1941); *In re Twin State Gas & Electric Co.*, 2 F. P. C. 122, 123 (1940); *Lexington Utilities Co.*, 1 F. P. C. 787 (1939); *In re Evans*, 1 F. P. C. 511, 515–518 (1937).

A large number of orders discussing § 318 arose under § 204, in connection with requests for approval of securities sales or issuance. See *Buckeye Power, Inc.*, 38 F. P. C., at 259; *Orange & Rockland Utilities, Inc.*, 34 F. P. C., at 108; *Philadelphia Electric Co.*, 28 F. P. C., at 1027; *Utah Power & Light Co.*, 28 F. P. C. 97, 98–99 (1962); *Pacific Power & Light Co.*, 27 F. P. C. 623, 626 (1962); *Northern States Power Co.*, 25 F. P. C. 974, 977 (1961); *Northern States Power Co.*, 24 F. P. C. 457, 460 (1960); *Mississippi Valley Public Service Co.*, 23 F. P. C., at 108; *Holyoke Water Power Co.*, 21 F. P. C. 676, 678 (1959); *Conowingo Power Co.*, 21 F. P. C., at 513–514; *Minnesota Power & Light Co.*, 21 F. P. C. 214, 215 (1959); *Northern States Power Co.*, 20 F. P. C. 355, 357 (1958); *Orange & Rockland Utilities, Inc.*, 20 F. P. C., at 207; *Orange & Rockland Electric Co.*, 19 F. P. C., at 275–276; *Holyoke Water Power Co.*, 18 F. P. C. 821, 826 (1957); *Northern States Power Co.*, 18 F. P. C., at 536–537; *Kentucky Utilities Co.*, 18 F. P. C. 44, 46 (1957); *Northern States Power Co.*, 16 F. P. C., at 880; *Interstate Power Co.*, 15 F. P. C. 1355, 1356–1357 (1956); *Rockland Light & Power Co.*, 13 F. P. C., at 1302; *Wisconsin River Power Co.*, 8 F. P. C. 1111, 1112 (1949); *In re Oklahoma Gas & Electric Co.*, 5 F. P. C. 52, 54 (1946); *Montana-Dakota Utilities Co.*, 3 F. P. C., at 631; *California Electric Power Co.*, 2 F. P. C. 1099, 1100 (1941); *Montana-Dakota Utilities Co.*, 2 F. P. C. 1027, 1028 (1941); *Otter Tail Power Co.*, 2 F. P. C. 1022, 1024–1025 (1941); *Nevada-California Electric Co.*, 2 F. P. C. 956, 957 (1941); *Otter Tail Power Co.*, 2 F. P. C., at 937; *In re Montana-Dakota Utilities Co.*, 2 F. P. C. 350, 356 (1941); *Sierra Pacific Power Co.*, 2 F. P. C. 839, 841 (1940); *Montana-Dakota Utilities Co.*, 2 F. P. C. 831, 833 (1940).

Only a few orders involved § 301 (accounting requirements) and § 304 (reporting requirements). See *Appalachian Power Co.*, 28 F. P. C. 1199, 1223–1237 (1962); *Jersey Central Power & Light Co.*, 14 F. P. C. 858, 859 (1955); *Metropolitan Edison Co.*, 14 F. P. C. 736, 737 (1955); *In re Arkan-*

quirements exist be one of those specifically enumerated, and not some different, more general "other subject matter"— such as what the Court of Appeals relied upon, "[t]he price term of sales contracts between associated companies," 279 U. S. App. D. C., at 333, 880 F. 2d, at 1406. In the context of the present case, the only enumerated subject matter conceivably pertinent is contained within what we have referred to as the fourth category. To prevail under § 318, Ohio Power would have to establish that it has been subjected both to an SEC requirement under PUHCA and to a FERC requirement under the FPA, "with respect to . . . the acquisition or disposition of any security, capital assets, facilities, or any other subject matter." The acquisition of SOCCO by Ohio Power might fit the quoted description, so that requirements in the SEC orders might qualify; but it is impossible to identify any FERC requirement that is imposed (as § 318 demands) "with respect to the same subject matter." One might say, we suppose, that a FERC rate requirement is imposed "with respect to the disposition" of electric power— though it does some violence to the interpretive rule of *ejusdem generis* to say that electric power qualifies as an "other subject matter" at the end of a list that includes securities, capital assets, and facilities, see, *e. g.*, *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 588 (1980); *id.*, at 601 (REHNQUIST, J., dissenting); *Third National Bank in Nash-*

---

sas *Power & Light Co.*, 8 F. P. C. 106, 127–128 (1949); *Northern Indiana Public Service Co.*, 4 F. P. C. 1070, 1071 (1945); *In re Superior Water, Light & Power Co.*, 3 F. P. C. 254, 257 (1942).

[2] The slight indication in the legislative history that conferees who added the phrase "or any other subject matter" might have intended such a general conflicts provision, cf. H. R. Conf. Rep. No. 1903, 74th Cong., 1st Sess., 75 (1935), is contradicted by the fact that their revision eliminated the word "or" that had previously appeared before "facilities," rather than the "or" that introduced the fourth category. Compare *id.*, at 63 with S. 2796, 74th Cong., 1st Sess., 292 (in House, June 13, 1935), and S. 2796, 74th Cong., 1st Sess., 295 (in Senate, May 13, 1935). In any case, the legislative history is overborne by the text.

*ville* v. *Impac Limited, Inc.*, 432 U. S. 312, 322 (1977). But even if one accepts that FERC's rate order is a requirement qualifying under § 318, it is still a requirement with respect to a *different* subject matter from (and not, as § 318 requires, "with respect to the same subject matter" as) the acquisition of SOCCO. The combination of SEC requirements with respect to the acquisition of SOCCO and FERC requirements with respect to the disposition of electric power would not bring § 318 into play.[3]

## III

Our conclusion that § 318 has no application to this case does not end review of the FERC order. Remaining to be resolved is the alternative ground relied upon by Judge Mikva's concurrence in the Court of Appeals, *Ohio Power Co.* v. *FERC*, 279 U. S. App. D. C., at 337, 880 F. 2d, at 1410—namely, the argument that FERC's decision violates its own regulation, which provides that where the price of fuel purchased from an affiliate "is subject to the jurisdiction of a regulatory body, such cost shall be deemed to be reasonable and includable" in wholesale rates. 18 CFR § 35.14(a)(7) (1990). Also available, and unresolved by the Court of Appeals, is the argument that the FERC-prescribed rate is not "just and reasonable" because it "traps" costs which the Government itself has approved—disregarding a governmental assurance, possibly implicit in the SEC approvals, that Ohio Power will be permitted to recoup the cost of acquiring and operating SOCCO. Cf. *Nantahala Power & Light Co.* v. *Thornburg*, 476 U. S. 953 (1986). We express no view on these questions, and leave them to be resolved by the Court of Appeals.

---

[3] The same conclusion would follow if we regarded the action qualifying for § 318 treatment to be, not Ohio Power's acquisition of SOCCO, but Ohio Power's acquisition of coal (implicit in its acquisition of SOCCO). It remains impossible to find any FERC requirement imposed "with respect to the same" acquisition. The FERC pricing requirement imposed with respect to the disposition of electric power is still not pre-empted by § 318.

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER took no part in the consideration or decision of this case.

JUSTICE STEVENS, with whom JUSTICE MARSHALL joins, concurring.

While I join the Court's opinion because I am persuaded that its interpretation of the statute is correct, I add this additional explanation of my vote because neither the parties, the interested agencies, nor the Court of Appeals considered the construction of § 318 that the Court adopts today.[1]

Even if § 318 were read broadly to give the SEC priority over FERC whenever the requirements of the two agencies conflict, I would come to the same conclusion. The SEC's orders at issue in this case do not conflict with FERC's requirement that Ohio Power recover only the market price of coal from its customers. The SEC's orders approving the creation and capitalization of SOCCO do not require it to pass all coal production costs on to Ohio Power and its affiliates.[2]

---

[1] I agree with the Court that the legislative history provides little guidance in interpreting the scope of § 318's " 'other subject matter' " language. See *ante*, at 84, n. 2. The relevant information provided by the legislative history essentially cancels itself out. The Conference Report on the Public Utility Act contains a statement to the effect that the "or other subject matter" language in § 318 should be read as all inclusive. That Report stated: "The conference substitute [of § 318] is enlarged to include any conflict arising under this bill." H. R. Conf. Rep. No. 1903, 74th Cong., 1st Sess., 75 (1935). The revision of § 318 that accompanied that Report, however, contained language that indicates that "or any other subject matter" is a subset of the "acquisition or disposition of" language in that section. That version of § 318 provided: "[i]f, with respect to the issue, sale, or guaranty of a security, or assumption of obligation or liability in respect of a security, the method of keeping accounts, the filing of reports, or the acquisition or disposition of any security, capital assets, facilities, or any other subject matter . . . ." *Id.*, at 63.

[2] See *ante*, at 75–76.

At most, these orders establish a ceiling requiring that the price SOCCO charges its affiliates for coal remains at or below its costs. The market price for coal during the time relevant to this proceeding has been less than SOCCO's costs.[3] Consequently, Ohio Power is able to comply with the requirements of both agencies.

There is no risk of conflict between the requirements of the SEC and FERC in this case. The SEC's orders limit the price which Ohio Power pays its supplier—SOCCO. The FERC's order, on the other hand, limits what portion of its fuel costs Ohio Power may pass along to its customers. The two agencies' requirements limit Ohio Power's financial relationships with different parties—its supplier and its customers. The two requirements also concern different aspects of fuel costs—the amount Ohio Power must pay for its fuel and how much of those fuel costs it can recover directly from its customers.

Finally, it is significant that the Court of Appeals' reading of § 318 would create a gap in the regulatory scheme that Congress could not have intended. Congress enacted PUHCA to prevent financial abuses among public utility holding companies and their affiliates. *Gulf States Utilities Co.* v. *FPC*, 411 U. S. 747, 758 (1973); see also § 1(b) of PUHCA, 15 U. S. C. § 79a(b). It entrusted the SEC, the agency with the expertise in financial transactions and corporate finance, with the task of administering the Act. The SEC carries out its duties essentially by monitoring interaffiliate financial transactions and eliminating potential conflicts of interest. See generally Public Utility Holding Company Act: Hearings on H. R. 5220, H. R. 5465, and H. R. 6134 before the Subcommittee on Energy Conservation and Power of the House Committee on Energy and Commerce, 97th Cong., 2d Sess., 553, 579–583 (1982). Congress enacted the FPA to regulate the wholesale interstate sale and distribution of electricity.

---

[3] See *ante*, at 76–77.

*Gulf States Utilities Co.* v. *FPC, supra,* at 758. It entrusted the administration of the FPA to the FPC and later FERC as the agency with the proper technical expertise required to regulate energy transmission. One of the FPA's principal goals is to ensure that the rates customers pay for their electricity are "just and reasonable." See §§ 205, 206(a) of the FPA, 16 U. S. C. §§ 824d, 824e(a).

Congress enacted PUHCA to supplement, not to supplant, the FPA. Yet, this is the effect that the Court of Appeals opinion would have in those areas in which the two agencies' authority overlap. In these overlapping areas, the subject matter would come under the scrutiny of only the SEC despite the difference between the goals and expertise of the two agencies.[4] As the Court of Appeals decision would apply in this case, Ohio Power would be allowed to buy coal at prices that would be higher than those paid by any utility not owned by a holding company, and then pass those higher costs along to its customers. I do not believe that Congress intended to relieve utilities owned by holding companies of substantial technical regulation because of their corporate structure. It intended those utilities to be subject to the regulation of both the SEC and FERC as much as practicable. The Court's construction of § 318 is consistent with this goal.

---

[4] For example, §§ 9 and 10 of PUHCA, 15 U. S. C. §§ 79i, 79j, require SEC approval before a holding company and any of its affiliates acquire any securities or assets of a utility. The SEC review of such a merger seeks, among other things, to avoid undue concentration of control over utilities. See 15 U. S. C. § 79j(b). Section 203 of the FPA, 16 U. S. C. § 824(b), requires FERC to approve a public utility's sale, lease, merger, or consolidation of its facilities. FERC's goals under § 203 of the FPA are to maintain adequate service and coordination of facilities. See *Savannah Elec. & Power Co.,* 42 FERC ¶ 61,240, p. 61,778 (1988). Under the Court of Appeals' interpretation of § 318, FERC review of any matter involved in a sale of part or all of a utility's facilities to a holding company would be improper despite the differing focus and goals of the two agencies.