954 F.2d 779
 293 U.S.App.D.C. 348, 60 USLW 2524, Fed.
Sec. L. Rep. P 96,496,
129 P.U.R.4th 447
 OHIO POWER COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
LCP Chemicals & Plastics, Inc., et al., Municipal Wholesale
Electric Customers of Ohio Power Company, Intervenors.
 No. 88-1293.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 27, 1991.
Decided Feb. 4, 1992.
 
 [293 U.S.App.D.C. 349] On Remand from the United States Supreme Court.
 Edward Berlin, with whom Kenneth G. Jaffe and Edward J. Brady, Washington, D.C., were on the brief, for petitioner. Andrew L. Lipps, Washington, D.C., also entered an appearance for petitioner.
 Joseph S. Davies, Deputy Sol., with whom William S. Scherman, Gen. Counsel, Jerome M. Feit, Sol., and Timm Abendroth, Atty., Washington, D.C., were on the brief, for respondent. John Estes, Joanne Leveque, and Catherine C. Cook, Attys., F.E.R.C., Washington, D.C., also entered appearances for respondent.
 Gregg D. Ottinger, with whom John P. Williams, Washington, D.C., and Lee F. Feinberg, Charleston, W.Va., were on the brief, for intervenors.
 James B. Liberman, Washington, D.C., was on the brief for amici curiae Registered Holding Co. Group, urging that the decision of the F.E.R.C. be reversed and the matter remanded to the Com'n.
 James R. Doty, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Katharine Gresham, Asst. Gen. Counsel, and Paul Gonson, Sol., S.E.C., Washington, D.C., were on the brief for amicus curiae.
 Before MIKVA, Chief Judge, and SILBERMAN and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 Ohio Power Company, a producer of electricity, was subjected to the regulatory jurisdiction of two agencies, the Federal Energy Regulatory Commission ("FERC") and the Securities and Exchange Commission ("SEC"). Specifically, FERC determined in a wholesale rate proceeding that the SEC-approved price paid by Ohio Power for coal from its associate Southern Ohio Coal Company ("SOCCO") could not be included in Ohio Power's wholesale rate to the extent that it was greater than the market price for comparable coal. Ohio Power Co., 39 F.E.R.C. p 61,098 (1987).
 
 
 2
 We initially granted Ohio Power's petition to vacate the FERC order on the ground that § 318 of the Federal Power Act insulated SEC-approved prices from FERC alteration. Ohio Power Co. v. FERC, 880 F.2d 1400, 1410 (D.C.Cir.1989). Ruling that § 318 did not address the conflict faced by Ohio Power, the Supreme Court remanded the case to us. Arcadia, Ohio v. Ohio Power Co., --- U.S. ----, 111 S.Ct. 415, 422, 112 L.Ed.2d 374 (1990). We now grant Ohio Power's petition to vacate the FERC order for the reasons discussed below.
 
 BACKGROUND
 I. The Statutory Scheme
 
 3
 In 1935, Congress enacted grants of authority to the SEC and FERC's predecessor, the Federal Power Commission, under [293 U.S.App.D.C. 350] an umbrella statute entitled the Public Utility Act, ch. 687, 49 Stat. 803 (1935). Title I, known as the Public Utility Holding Company Act ("PUHCA"), empowers the SEC to curb abuses affecting investors and consumers created by transactions between subsidiary associates of public utility holding companies. 49 Stat. 803 (1935) (codified as amended at 15 U.S.C. §§ 79a to 79z-6). The SEC discharges its responsibilities in large part under § 13 of the PUHCA, which makes transactions between associate companies unlawful unless they are approved by the SEC at terms found to be "in the public interest or for the protection of investors or consumers." 15 U.S.C. § 79m(b).[1]
 
 
 4
 Title II, known as the Federal Power Act ("FPA"), established the Federal Power Commission to oversee the wholesale transmission and sale of interstate electric power. 49 Stat. 838 (1935) (codified as amended at 16 U.S.C. §§ 791a-825r). FERC, which succeeded the now-departed Federal Power Commission, fulfills a critical part of its mandate by setting "just and reasonable" wholesale electric rates under §§ 205 and 206 of the FPA. 16 U.S.C. §§ 824d & 824e. Thus, under the FPA and the PUHCA,
 
 
 5
 FERC-regulated electric power companies [such as Ohio Power] that are subsidiaries or affiliates of registered public utility holding companies are therefore subject to SEC regulation as well.
 
 
 6
 Arcadia, 111 S.Ct. at 417; see also Ohio Power Co., 880 F.2d at 1402-04 (summarizing statutory backdrop of this action).
 
 II. Factual Background
 
 7
 Ohio Power Company produces electricity with coal-burning generation plants and is a subsidiary of one of the nation's largest public utility holding companies, American Electric Power Company. In 1971, Ohio Power entered into a lease with the owners of the Martinka Mine for development of coal by Ohio Power's subsidiary and associate, SOCCO. Before Ohio Power could capitalize SOCCO's mining operations by purchasing its stock, § 10 of PUHCA required the SEC to approve the proposed transaction. 15 U.S.C. § 79j. In its order of December 2, 1971, the SEC determined that Ohio Power could obtain coal from SOCCO at a price "based on an amount equal to the actual cost" of coal production including a reasonable rate of return on Ohio Power's capital investment. Ohio Power Co., Holding Company Act Release ("HCAR") No. 17,383 (1971); see Arcadia, 111 S.Ct. at 417-18 (discussing history of Ohio Power's capitalization of SOCCO).[2]
 
 
 8
 This action came initially before us as a result of a May 28, 1982, wholesale rate increase application that Ohio Power filed with FERC pursuant to §§ 205 and 206 of the FPA. FERC eventually accepted the application except for Ohio Power's request to pass through the cost-based price that it paid for SOCCO coal. Asserting that comparable coal could be obtained at a cheaper market price, FERC found the SOCCO coal price unreasonable and therefore not includable in Ohio Power's wholesale rate. Ohio Power Co., 39 F.E.R.C. p 61,098, at 61,275 (1987). Ohio Power insisted the SEC alone had jurisdiction over the price that associates may charge each other for [293 U.S.App.D.C. 351] goods,[3] and sought judicial vindication.
 
 
 9
 Before this Court, Ohio Power and FERC argued that the controversy centered on the application of the jurisdictional conflicts provision of the Public Utility Act, § 318 of the FPA. Ohio Power Co., 880 F.2d at 1405-09. The parties agreed § 318 provided that the requirements of the PUHCA govern when a company is subject to conflicting PUHCA and FPA regulation "with respect to the same subject matter." 16 U.S.C. § 825q. FERC defended its order on two grounds: first, by claiming there was no conflict between the agencies because the FERC order required Ohio Power to pay a market price that was less than cost and the SEC orders simply required Ohio Power to pay no more than cost; and second, by asserting that, regardless of conflict, since FERC was regulating wholesale rates and the SEC was regulating inter-associate prices, the agencies were not regulating the "same subject matter." Ohio Power Co., 880 F.2d at 1405.
 
 
 10
 This Court agreed with Ohio Power that even if the SEC orders were read to enshrine cost only as a ceiling, Ohio Power was nevertheless subject to conflicting regulatory authorities in that FERC had "set by order a different price term" for a contract approved by the SEC. Id. at 1406. Similarly, we found that the two agencies were regulating the "same subject matter," and that therefore § 318 required FERC to defer to the SEC's approval of a cost-based price for SOCCO coal. Id. at 1408-09. In a separate opinion, Judge, now Chief Judge, Mikva concurred in the result, but on the alternative ground that FERC had violated one of its own regulations requiring it to "deem" reasonable and includable prices set by other regulatory bodies (here, the SEC). Id. at 1412-14 (construing FERC regulation 18 C.F.R. § 35.14(a)(7)).
 
 
 11
 In its review, the Supreme Court adopted a reading of § 318 not advanced by "the parties, the interested agencies, [or] the Court of Appeals," Arcadia, 111 S.Ct. at 422 (Stevens, J., concurring), and found that the conflict affecting Ohio Power was not covered by § 318. Id. at 421-22. The Arcadia Court read § 318 as applying only to four specifically enumerated types of conflicts, and held that, although Ohio Power was subject to "overlapping regulatory jurisdiction of both the SEC and of FERC," id. at 417, § 318 was silent regarding the type of overlap asserted by Ohio Power in this case. Id. at 422.
 
 
 12
 Advising us that its interpretation of § 318 did not "end review of the FERC order," the Court remanded with instructions to resolve whether: (1) as Judge Mikva observed, FERC violated its own regulation; and (2) "the FERC-prescribed rate" is unjust and unreasonable because it " 'traps' costs which the government [the SEC] itself has approved". Id.
 
 
 13
 Justice Stevens wrote a concurring opinion, joined by Justice Marshall, in which he found that even if the overlap in authorities fell within the enumerated subjects of § 318, there was "no risk of conflict between the requirements of the SEC and FERC in this case." Id. at 423 (Stevens, J., concurring). Justices Stevens and Marshall, therefore, agreed with FERC that the two agencies were regulating different subject matters, with FERC overseeing "what portion of its fuel costs Ohio Power may pass along to its customers" and the SEC placing a ceiling on "the price which Ohio Power pays its [coal] supplier--SOCCO." Id. The concurrence ended by commenting that Congress's intent would be frustrated by a holding that would allow the SEC to hamper FERC's regulation of wholesale rates. Id. at 423-24.
 
 ANALYSIS
 I. FERC Regulation 18 C.F.R. § 35.14(a)(7)
 
 14
 As instructed by the Court, we have reviewed Part II of Judge Mikva's concurring opinion, which contended that a remand was required on the ground that 18 C.F.R. § 35.14(a)(7) of FERC's own rules precluded FERC from "imposing its market-price test" in the face of a cost-based coal price approved by the SEC. Ohio [293 U.S.App.D.C. 352] Power Co., 880 F.2d at 1412-14. Judge Mikva concluded that "[u]nder the regulation, because the prices of Ohio Power's fuel from its affiliate are subject to the jurisdiction of the SEC, such costs must be conclusively presumed reasonable." Id. at 1414. We now adopt Judge Mikva's approach as reflecting the view of this panel.
 
 
 15
 Section 35.14(a)(7) addresses fuel price adjustment clauses in filed rate schedules, and provides in pertinent part:
 
 
 16
 Where the utility purchases fuel from a company-owned or controlled source, the price of which is subject to the jurisdiction of a regulatory body, such cost shall be deemed to be reasonable and includable in the adjustment clause.
 
 
 17
 18 C.F.R. § 35.14(a)(7). The dispute here focuses on the meaning of the word "deemed," with Ohio Power arguing that it establishes a conclusive presumption for including such costs, and FERC urging that it sets only a rebuttable presumption, which in Ohio Power's case was disproved.
 
 
 18
 Judge Mikva began by remarking that "no deference is owed an interpretation at odds with the plain meaning of the text." Ohio Power Co., 880 F.2d at 1413 (Mikva, J., concurring) (citing Union of Concerned Scientists v. NRC, 711 F.2d 370, 381 (D.C.Cir.1983) ("When an agency's interpretation flies in the face of the language of the rules themselves, it is owed no deference.")). He then found that "courts construing the word 'deemed' have generally found that it establishes a conclusive presumption." Id. (citing, e.g., H.P. Coffee Co. v. Reconstruction Finance Corp., 215 F.2d 818, 822 (Emer.Ct.App.1954) (finding near "unanimous judicial determination that the word [deemed], when employed in statutory law, creates a conclusive presumption.")). In addition to H.P. Coffee and the other cases cited in the concurrence, we note also that two decisions from this Circuit have construed the term deemed and found that it created a conclusive presumption. See Gaither v. Myers, 404 F.2d 216, 218 (D.C.Cir.1968) (finding that use of term deemed in a liability statute changed the common law rule of agency by making agency status turn solely on the consent of an owner to use a car, while the common law rule considered consent one of many factors); and Forrester v. Jerman, 90 F.2d 412, 413 (D.C.Cir.1937) (interpreting same statute as in Gaither and reaching same conclusion after finding that deemed "is unambiguous and leaves nothing for interpretation."). Given the unambiguous character of deemed, then, we find case law amply supports our finding that the plain language of § 35.14(a)(7) requires FERC to include in Ohio Power's wholesale rate the SEC-approved cost-based price for SOCCO coal.
 
 
 19
 FERC attempts to cloud the clear meaning of deemed by pointing to the complicated rulemaking history of § 35.14(a)(7). Brief of Respondent at 31-32. We agree with Judge Mikva's past disposition of this argument and find that, if anything, the regulatory history cuts against a rebuttable presumption interpretation of deemed, particularly when considering the evolution of the regulation from its proposed form in 1973 to its final promulgation in 1974. See Ohio Power Co., 880 F.2d at 1413-14. The original version stated that "[o]nly the reasonable cost of fuel [purchased from an associate] may be included" in the wholesale rate, 38 Fed.Reg. 17,253 (1973), language consistent with the rebuttable presumption urged by FERC. But the regulation as ultimately issued abandoned this formulation and instead contained the "such cost shall be deemed reasonable and includable" language that we read as creating a conclusive presumption. 39 Fed.Reg. 28,911 (1974).
 
 
 20
 Finally, we find prior administrative pronouncements regarding the meaning of § 35.14(a)(7) of little moment to the extent they are not consistent with the unambiguous terms of the regulation. See Union of Concerned Scientists, 711 F.2d at 381. If FERC wishes to have § 35.14(a)(7) create only a rebuttable presumption, then it may do so explicitly through the required process. As currently written, however, we agree with Judge Mikva that "section 35.14(a)(7) establishes, as a policy matter, that if another regulatory body has already passed on the fuel price, then FERC will abide by that determination." Ohio Power [293 U.S.App.D.C. 353] Co., 880 F.2d at 1414. We therefore hold that under § 35.14(a)(7), FERC was obliged to find "reasonable and includable" Ohio Power's fuel costs as approved by the SEC, and we remand to FERC for further findings not inconsistent with this opinion.
 
 
 21
 II. Reconciliation of the Overlapping Regulatory Authorities
 
 
 22
 By precluding FERC from declaring an SEC-approved price unreasonable, our interpretation of § 35.14(a)(7) provides Ohio Power with some succor from the "overlapping regulatory jurisdiction of both the SEC and of FERC" found by the Arcadia Court. 111 S.Ct. at 417. However, we believe that more than the regulation requires this result.
 
 
 23
 In Arcadia, the Supreme Court advised us that § 318 is not the mechanism by which the overlapping regulatory jurisdiction issue may be resolved. The Court left for us, though, the task of deciding how to reconcile the conflict, if any, created by FERC's attempt to allow only a market-based price for SOCCO coal when calculating wholesale rates and the SEC's orders requiring Ohio Power to pay either cost or no more than cost for SOCCO coal.
 
 
 24
 To begin, we do find that the overlapping authorities have resulted in unavoidable conflicting requirements for Ohio Power. Justice Stevens in his Arcadia concurrence noted that the "market price for coal during the time relevant to this proceeding has been less than SOCCO's costs." Arcadia, 111 S.Ct. at 423. From this, he reasoned that no conflict existed since the SEC orders did no more than "establish a ceiling requiring that the price SOCCO charges its affiliates for coal remain at or below its costs." Id.
 
 
 25
 However, Ohio Power represents that the "market price, calculated according to FERC's methodology, has exceeded the cost of mining Martinka coal in some months." Brief of Petitioner Ohio Power at 24 & n. 15. FERC does not contest this representation. Moreover, if one interprets the SEC orders as establishing cost as both a floor and a ceiling, then Ohio Power will suffer regulatory dissonance whenever the market price deviates from cost.
 
 
 26
 We are also unpersuaded by the argument that no conflict exists because FERC is simply regulating how much Ohio Power can charge for power, not how much Ohio Power pays for SOCCO coal. By declaring a portion of the SOCCO coal price unreasonable and therefore not includable in Ohio Power's wholesale rate, FERC is undeniably affecting the economic relationship between Ohio Power and SOCCO, a relationship approved by, and under the jurisdiction of, the SEC. Cf. Nantahala Power & Light v. Thornburg, 476 U.S. 953, 971, 106 S.Ct. 2349, 2359, 90 L.Ed.2d 943 (1986) (overturning action of a state regulatory body that, by its orders establishing retail rates, required the regulated entity to "pretend that it is paying less for the power it receives ..., under agreements not subject to [the state's] jurisdiction, than is in fact the case.").
 
 
 27
 We find the resolution of this conflict in the plain language of the statute authorizing the SEC to regulate sales contracts of associate companies. Section 13(b) of the PUHCA empowers the SEC to approve the price of inter-associate sales of goods, such as coal, and directs the SEC to price these goods "at cost, fairly and equitably allocated among [associate] companies." 15 U.S.C. § 79m(b). Here, the SEC did just that with its four orders approving Ohio Power's relationship with SOCCO, which reflected § 13(b)'s mandate to price SOCCO's coal "at cost."[4]
 
 
 28
 In contrast to the SEC's specific statutory mandate to establish a cost-based price for sales of goods between associates, FERC can point to no equivalent authority besides its general charge to establish "just and reasonable" wholesale electric rates. 16 U.S.C. §§ 824d & 824e. Of course, it is black letter law that when a conflict arises between specific and general provisions of the same legislation, the courts should give voice to Congress's specific articulation of its policies and preferences. 2A NORMAN J. SINGER, SUTHERLAND [293 U.S.App.D.C. 354] STATUTORY CONSTRUCTION § 46.05, at 105 n. 19 (5th ed. 1992). Accordingly, we hold that Congress in § 13(b) of the PUHCA authorized the SEC to set the price of SOCCO coal "at cost," and in so doing constrained FERC from altering that price under its "just and reasonable" rate-setting authority.
 
 
 29
 In support of its order, FERC advances the argument that the SEC orders "do not appear to mandate the cost-based price where a market price could be lower, rather they permit a price up to a cost-based price." Ohio Power Co., 39 F.E.R.C. p 61,098, at 61,276 (1987), quoted in Brief of Respondent at 26. Citing SEC Rule 92, 17 C.F.R. § 250.92, the Commission found that "not only does the SEC not require a cost-based price for the subsidiary coal, the SEC may require a market-based price for subsidiary coal if the market price is lower than cost." Id. (emphasis added).
 
 
 30
 Without addressing whether the SEC does in fact have the authority to establish a lower-than-cost market price,[5] even FERC concedes that Rule 92 empowers the SEC alone to set such a price. FERC does not cite, and we can not find, any indication in the orders that the SEC was exercising its authority to establish a below-cost market price for SOCCO coal. The orders do not mention market price as a limit to price, nor do they require Ohio Power to show that comparable coal was unavailable before paying cost for SOCCO coal.[6]
 
 
 31
 Instead, the orders appear to embrace the cost-based price principles required by SEC Rules 90 and 91. 17 C.F.R. §§ 250.90 & 250.91. Consistent with § 13(b) of PUHCA, SEC Rule 90(a) prohibits associates from selling goods to each other at "more than cost," 17 C.F.R. § 250.90(a), and Rule 91(a) defines "more than cost" as "not exceed[ing] a fair and equitable allocation of expenses." 17 C.F.R. § 250.91(a).[7] The SEC orders harmoniously track this language. For example, the 1971 order states that the "charges for coal by [SOCCO] will be based on an amount equal to the actual cost," Ohio Power Co., HCAR No. 17,383 (1971), and the 1978 order states that the "price at which [SOCCO] coal is sold to [Ohio Power] will not exceed the cost thereof to the seller." Ohio Power Co., HCAR No. 20,515, 14 S.E.C. Docket 928 (1978); see also Southern Ohio Coal Co., HCAR No. 21,537, 19 S.E.C. Docket 1309 (1980) (stating that the price of SOCCO coal "will not exceed the cost thereof to the seller.").
 
 
 32
 That the 1978 and the 1980 orders, as well as SEC Rules 90 and 91, place more emphasis on cost as a ceiling rather than a floor is not surprising given the economic incentive of associate companies to pass through inflated costs for goods and services. See 15 U.S.C. § 79a(b)(2) (describing the following as one of the evils that make SEC regulation of associates necessary: "subsidiary public-utility companies are subjected to excessive charges for services, construction work, equipment, and materials"). But this concern with excessive charges does not diminish the exclusive role cost plays in establishing associate prices--Congress's use of the term "at cost" indicates that cost serves as a ceiling and a floor. To the extent there is downward flexibility in a cost-based price, we find that Congress did not make room for anyone other than the SEC to exercise this flexibility. We therefore find that the orders are better read as requiring Ohio Power to pay a price "equal to cost" for SOCCO coal, as prescribed by § 13(b) and the [293 U.S.App.D.C. 355] 1971 SEC order, and we reject FERC's attempt to clothe itself with the SEC's purported authority under Rule 92 to establish a market-based cap.[8]
 
 
 33
 In response to the congressional intent concerns expressed in Justice Stevens's concurrence, we do not mean to say that FERC is powerless to affect the SEC's price-approval process. When the SEC receives for approval an associate transaction and the suggested prices at which goods will be sold, SEC Rule 23 requires notice in the Federal Register and an opportunity for comment on the proposal. 17 C.F.R. § 250.23. Such notice was provided as part of Ohio Power's applications to the SEC. Additionally, FERC could conceivably ask the SEC to investigate whether the cost-based price for SOCCO coal violated "any rule or regulation" of the PUHCA. See 15 U.S.C. § 79r(a). Thus, FERC may attempt to affect the price-approval process, but Congress has granted the SEC alone the authority to establish prices charged by associates for goods.
 
 
 34
 Therefore, regardless of whether FERC may under other circumstances set prices that trap costs created by orders of other governmental entities, we hold that FERC may not set a cost-trapping rate level where that effect is occasioned by a recovery calculation inconsistent with an SEC determination governing an inter-associate transfer subject to § 13(b) of the PUHCA.
 
 CONCLUSION
 
 35
 In conclusion, we hold that 18 C.F.R. § 35.14(a)(7) prevents FERC from finding the coal price approved by the SEC not includable in determining Ohio Power's wholesale rate. As a separate ground for remand, we hold that the SEC properly discharged its authority under § 13(b) of the PUHCA by setting the price of coal sold by SOCCO to its associate Ohio Power "at cost," and that FERC must respect this specific grant of authority to the SEC. For the reasons given above, therefore, we allow the petition for review, and vacate and remand the order of FERC for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Section 13(b) of PUHCA states in pertinent part that
 it shall be unlawful for any subsidiary company of any registered holding company ... to enter into or take any step in the performance of any service, sales, or construction contract by which such company undertakes to perform services or construction work for, or sell goods, to any associate company thereof except in accordance with such terms and conditions and subject to such limitations and prohibitions as the Commission by rules and regulations or order shall prescribe as necessary or appropriate in the public interest or for the protection of investors or consumers and to insure that such contracts are performed economically and efficiently for the benefit of such associate companies at cost, fairly and equitably allocated among such companies.
 15 U.S.C. § 79m(b).
 
 
 [2]
 As observed by the Supreme Court, Ohio Power obtained three additional SEC approvals for various capital transactions with SOCCO. See Ohio Power Co., HCAR No. 20,515, 14 SEC Docket 928 (1978); Southern Ohio Coal Co., HCAR No. 21,008, 17 SEC Docket 310 (1979); and Southern Ohio Coal Co., HCAR No. 21,537, 19 SEC Docket 1309 (1980)
 
 
 [3]
 SEC regulation 17 C.F.R. § 250.80(b) defines "goods" to include coal
 
 
 [4]
 See supra note 1 and accompanying text
 
 
 [5]
 The SEC does have express statutory authority under § 13(b) to deviate from the "at cost" standard when a transaction "involve[s] special or unusual circumstances." 15 U.S.C. § 79m(b). However, no one has suggested that the SEC invoked this source of authority in the orders concerning Ohio Power
 
 
 [6]
 According to its brief, the SEC "has long recognized" that a lower-of-cost-or-market interpretation would effectively eliminate affiliate transactions by preventing investors from keeping profits when cost is below market (to offset losses when cost is above market). Brief of Amicus SEC at 4. See also Ohio Power Co., 880 F.2d at 1410 (observing that FERC interpretation of SEC orders places Ohio Power in a "tails-we-lose" situation)
 
 
 [7]
 SEC Rule 90(d) does provide that the price of goods "need not be limited to cost," and then references the market-price cap discussed in Rule 92; but, as stated above, this provision was not relied upon by the SEC in this case
 
 
 [8]
 Although we grant the SEC's views no deference, we note that our interpretation of the SEC's orders is consistent with their submission in this case. See Brief of Amicus SEC at 5