James MCDONALD, Plaintiff–
Appellee–Cross–Appellant,

v.

PENSION PLAN OF THE NYSA–ILA
PENSION TRUST FUND and Board
of Trustees of the Pension Plan of the
NYSA–ILA Pension Trust Fund, De-
fendants–Appellants–Cross–Appellees.

Docket Nos. 01–9226, 01–9316.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 6, 2002.

Decided: Feb. 10, 2003.

152

Donato Caruso (C. Peter Lambos, Nicholas G. Maglaras of Lambos & Junge and Thomas W. Gleason, Ernest L. Mathews, Jr. of Gleason & Mathews, P.C. on the brief), Lambos & Junge, New York, NY, for Defendants–Appellants–Cross–Appellees.

Edgar Pauk, New York, NY, for Plaintiff–Appellee–Cross–Appellant.

Before: CALABRESI and B.D. PARKER, Circuit Judges, COTE, District Judge.*

B.D. PARKER, JR., Circuit Judge.

James McDonald worked as a longshoreman intermittently from 1953 until his retirement in 1991, after which he received a lifetime pension. Believing his pension calculations failed to reflect 13 years during which he had accrued benefits, he sued the Pension Plan of the NYSA–ILA Pension Trust Fund and its Trustees (collectively, the "PTF"), principally challenging a Plan provision that permitted the PTF to disregard years of service rendered prior to a break in service that occurred before the passage of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1001 *et seq.*

The district court agreed in part and required the PTF to amend the Plan to remove the break-in-service provision retroactively to January 1, 1976, the effective date of ERISA. The district court also dismissed McDonald's other claims for class relief, recalculation of statutory penalties, and reassessment of photocopying expenses. The PTF appeals and McDonald cross-appeals.

We agree with the court below that ERISA § 204, 29 U.S.C. § 1054, trumps

the Plan's break-in-service provision that limits the accrual of benefits arising from pre-ERISA employment. *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund,* 153 F.Supp.2d 268, 280–81 (S.D.N.Y.2001) (*"McDonald I"*). We also conclude, however, that ERISA § 202(a)(3)(A)'s definition of a "year of service" as service in excess of 1,000 hours in a year may affect McDonald's claim for additional benefits and the need, if any, for the Plan's retroactive amendment. 29 U.S.C. § 1052(a)(3)(A). Since this potentially dispositive issue was not fully explored below, we remand so it can receive additional consideration. Next, we conclude that the district court acted well within its discretion in denying class-wide relief and that it correctly calculated statutory penalties. We disagree, however, with the Court's evaluation of what constitutes reasonable photocopying expenses. *See* ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). The judgment of the district court is thus affirmed in part, reversed in part, and vacated and remanded in part.

## BACKGROUND

The material facts are not in dispute. The pension plan at issue is a joint labor-management trust fund that administers a defined-benefit, multi-employer pension plan for longshoremen such as McDonald. This fund's Trustees are the administrators of the Plan.

The PTF has modified the Plan several times since its creation in 1950. Initially, the Plan provided only a single benefit—a flat, monthly sum called a Service Retirement Pension ("SRP")—to retired partici-

---

* The Honorable Denise Cote, United States District Court for the Southern District of New York, sitting by designation.

pants. Eligibility for the SRP originally was limited to those employees 65 years or older who had been employed in the industry for a continuous period of at least 25 years and who were actively employed in the industry at the time of their retirement. The Plan gave pension credit for any year in which an individual worked a minimum of 400 hours (a "year of credited service"), but to satisfy the Plan's 25–year minimum service requirement, an individual needed an average annual employment of at least 700 hours.

Following the enactment of ERISA, the PTF modified the Plan to provide an additional Vested Rights Pension ("VRP") for employees who failed to satisfy the SRP's more rigid eligibility requirements. The VRP contains the following formula for benefits:

(a) for years of credited service in the industry prior to January 1, 1976, [a plan participant] shall receive 1–1/2% of the maximum monthly benefit in effect at the time he ceased employment in the industry, multiplied by years of credited service earned prior to January 1, 1976; and

(b) for years of credited service after January 1, 1976, he shall receive 3% of the maximum monthly benefit in effect at the time he ceased employment in the industry, multiplied by the number of years of credited service earned on or after January 1, 1976 plus 3% of (a) above multiplied by the number of years of credited service after January 1, 1976.

(c) [I]n no event shall a participant receive more than 100% of the maximum monthly benefit in effect at the time he ceased employment in the industry.

1985 Plan, p. 52. In November 1995, the PTF again amended the Plan, retroactive to January 1, 1976, to provide that all vested participants would accrue benefits in accordance with the VRP benefit formula and that those participants eligible for both the SRP and the VRP would receive the greater of the two benefits.

McDonald started working under the Plan in 1953 and earned 13 years of "credited service," under the Plan's definition, between 1953 and 1969. For the following three consecutive years, however, he failed to earn any years of credited service. Under the Plan's provisions then in effect, as a consequence of this break in service, McDonald's first 13 years of credited service no longer counted toward the benefits that he would receive on retirement. Between 1973 and 1991, McDonald earned 10 years of credited service. When McDonald turned 65, the PTF awarded him a monthly pension of approximately $263 based on these 10 years of credited service. In calculating McDonald's pension, the PTF used the VRP formula but did not count any years of service prior to 1970.

In 1999 McDonald sued, contending that the PTF's calculations violated ERISA. He asserted a variety of claims seeking individual as well as class relief. In one claim for individual relief, he argued that ERISA § 202's requirement that, with certain exceptions, "all years of service ... shall be taken into account" for benefit accrual purposes nullified the Plan's break-in-service provision and entitled him to 13 additional pre-ERISA years of service towards the calculation of his pension. The PTF argued, in contrast, that since § 203 allowed break-in-service provisions to survive for purposes of pre-ERISA vesting, these provisions would also survive for purposes of pre-ERISA benefit accrual, and, consequently, permit the PTF to disregard McDonald's 13 years of credited service prior to his 1970–1972 break in service.

In response to cross motions for summary judgment, the district court (Naomi Reice Buchwald, *Judge*) agreed with Mc-

Donald on this claim. In a thorough opinion the court concluded that, for purposes of determining an employee's participation in a plan, ERISA § 202(b), with certain enumerated exceptions, required that "all years of service" under the plan must be taken into account. Based on this reading of the statute, the court found that ERISA invalidated the Plan's break-in-service provisions that limited accrued benefits arising from pre-ERISA employment, and the court held that McDonald was entitled to credit for 23 years of service. Specifically, the court concluded that "ERISA § 203(b)(1)(F), 29 U.S.C. 1053(b)(1)(F), which permits plans to exclude, for vesting purposes, years of service that would have been disregarded under a pre-ERISA plan's break in service rules, is not applicable in determining the accrued benefit payable to an employee who has satisfied the vesting requirements." *McDonald I,* 153 F.Supp.2d at 275. The court emphasized that the text of ERISA was dispositive. Although the court reviewed secondary sources, it concluded that referencing legislative history and administrative commentary was unnecessary because "Congress has addressed the precise question at issue here and answered it in [McDonald's] favor." *Id.* at 276. In addition, the court determined that the Plan's pre- and post-ERISA accrual provisions complied with ERISA. Finally, the court concluded that a $30 photocopying bill (at 15 cents per page) from the Plan was reasonable, that plaintiff's counsel's claim to the contrary "border[ed] on the frivolous," and that his pursuit of a claim of that size was "vexatious and unprofessional." *Id.* at 291.

Following this decision, the PTF agreed to credit McDonald for 25 years of service under a Plan provision that authorized the award of two additional years of service to Plan participants who had earned 23 years of credited service. Although McDonald was therefore eligible for pension benefits

of $1,000 per month, the PTF refused to award him interest for any period before the district court's March 29, 2001 decision.

In October 2001, the district court issued its second decision. *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund,* No. 99 Civ. 9054, 2001 WL 1154630, 2001 U.S. Dist. LEXIS 15534 (S.D.N.Y. Oct. 1, 2001) (*"McDonald II"*). It denied McDonald's request for class-wide relief but held that McDonald was entitled to an immediate lump sum payment of past due pension benefits with interest from January 1, 1990, and that the PTF must retroactively amend its Plan to January 1, 1976. Finally, the district court awarded McDonald $1,065 pursuant to ERISA § 502(c)(1) because of the PTF's failure to furnish various documents but declined to find the PTF's calculation of photocopying expenses unreasonable.

The PTF appealed the district court's award of increased pension benefits and McDonald cross-appealed, challenging the district court's (1) refusal to grant class-wide relief, (2) determination that the Plan does not violate ERISA's minimal accrual standards, (3) calculation of penalties, and (4) dismissal of his claim that he was over-charged for document reproduction.

■■■ We review the district court's grant of summary judgment *de novo. Tri–State Employment Servs., Inc. v. Mountbatten Sur. Co.,* 295 F.3d 256, 260 (2d Cir.2002). Where, as here, there are no material facts in dispute, our responsibility is to determine whether the district court properly identified and applied the relevant law. Fed.R.Civ.P. 56(c); *see generally Lombard v. Booz–Allen & Hamilton, Inc.,* 280 F.3d 209, 214 (2d Cir.2002). In evaluating the district court's grants of equitable relief, we review for abuse of discretion. *Sharkey v. Lasmo (AUL Ltd.),*

214 F.3d 371, 374 (2d Cir.2000); *Srein v. Soft Drink Workers Union, Local 812*, 93 F.3d 1088, 1098 (2d Cir.1996).

## DISCUSSION

### A. Accrued and Vested Benefits Under ERISA

■ We first consider whether ERISA nullified the Plan's break-in-service provisions regarding benefits accrued during pre-ERISA employment. Under ERISA, breaks in service impact the related concepts of accrued and vested benefits. "Accrued" benefits refer to those normal retirement benefits that an employee has earned at any given time during the course of employment. 29 U.S.C. § 1002(23)(A); *see generally Esden v. Bank of Boston*, 229 F.3d 154, 162–63 (2d Cir.2000). "Vested" benefits, on the other hand, refer to those normal retirement benefits to which an employee has a "nonforfeitable"[1] claim; in other words, those accrued benefits he is entitled to keep. 29 U.S.C. § 1002(19).

The court below explained the relationship between the concepts as follows:

> An employee becomes fully vested when he has a nonforfeitable right to his entire accrued benefit. An employee accrues benefits both before and after he becomes vested in a portion of his accrued benefit.

*McDonald I*, 153 F.Supp.2d at 272 n. 4.

■ ERISA § 204(b)(1)(D)[2] provides for the accrual of benefits based upon an employee's "years of participation" in a plan. Moreover, § 204(b)(4)[3] starts the clock for "participation" at "the earliest date on which the employee is a participant in the plan" and notes that such participation is included in the "period of service required to be taken into account" under § 202(b). In turn, with regard to the computation of years relevant for accrual purposes, § 202(b)(1) provides:

> Except as otherwise provided in paragraphs (2), (3), and (4), *all years of service* with the employer or employers maintaining the plan *shall be taken into*

---

1. This subsection, 29 U.S.C. § 1002(19), states:

   The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. . . .

2. This subsection, 29 U.S.C. § 1054(b)(1)(D), states:

   Subparagraphs (A), (B), and (C) shall not apply with respect to years of participation before the first plan year to which this section applies but a defined benefit plan satisfies the requirements of this subparagraph with respect to such years of participation only if the accrued benefit of any participant with respect to such years of participation is not less than the greater of—
   (i) his accrued benefit determined under the plan, as in effect from time to time prior to September 2, 1974, or

   (ii) an accrued benefit which is not less than one-half of the accrued benefit to which such participant would have been entitled if subparagraph (A), (B), or (C) applied with respect to such years of participation.

3. This subsection, 29 U.S.C. § 1054(b)(4)(A), states:

   For purposes of determining an employee's accrued benefit, the term "year of participation" means a period of service (beginning at the earliest date on which the employee is a participant in the plan and which is included in a period of service required to be taken into account under section 1052(b) of this title, determined without regard to section 1052(b)(5) of this title) as determined under regulations prescribed by the Secretary which provide for the calculation of such period on any reasonable and consistent basis.

*account* in computing the period of service for purposes of subsection (a)(1).

29 U.S.C. § 1052(b)(1) (emphasis added).

This combination of "the earliest date" and "all years of service" on its face does not allow for any break in a participating employee's service to negate previously accrued benefits.[4] By contrast, ERISA § 203(b) treats breaks in service differently for vesting purposes. Section 203(b) explicitly allows pension plans to apply break-in-service provisions to the calculation of vested benefits arising from pre-ERISA service:

(1) In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:

. . .

(F) years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date. . . .

29 U.S.C. § 1053(b).

Both before and after the application of ERISA, the Plan deemed that an employee's pre-ERISA employment had terminated and was no longer continuous when the employee had worked fewer than 400 hours a year for more than two consecutive calendar years. As a result of such a "break in service," the PTF would not count an employee's years of service prior to the break toward either the vesting or accrual of benefits.

Given that ERISA first applied on January 1, 1976, McDonald's break in service during 1970, 1971 and 1972 would, for vesting purposes, fall under the Plan's pre-ERISA provisions.[5] ERISA § 203(b), 29 U.S.C. § 1053(b)(1)(F), would apply, and the PTF, in determining McDonald's vested benefits, could ignore his 13 years of pre–1970 service. Under ERISA § 202(b)(1), however, there is no congruent allowance for break-in-service provisions that deal with the calculation of accrued benefits arising from pre-ERISA service.

At the heart of this appeal lies the question of what to make of the absence of such explicit statutory language. McDonald argues that Congress's specific inclusion of language in ERISA § 203(b)(1) giving effect to break-in-service provisions with regard to vested benefits, coupled with its failure to include a parallel section in § 202(b) for accrued benefits, indicates that Congress intended for accrued and vested benefits to be treated differently. The PTF argues that this asymmetrical treatment of breaks in service is inconclusive and that reference to the treatment of vesting and accrual elsewhere in ERISA is required. Specifically, the PTF points to Congress's nearly identical treatment of accrued and vested benefits in ERISA § 211, which governs the transitional period between ERISA's passage on January 1, 1974, and its effective date of January 1, 1976. This similarity, the PTF argues, means that Congress wanted accrued and vested benefits treated the same under other ERISA provisions. The district court agreed with McDonald, as do we.

---

4. Note that, as discussed below, the applicable "rule of parity" permits some break-in-service provisions that deal with benefit accrual. *See* Pub.L. No. 93–406, 88 Stat. 829, 854 (1974).

5. The years in question, 1970 through 1973, also precede the transition period of January 1, 1974 to January 1, 1976, which is governed by ERISA § 211(e)(2), 29 U.S.C. § 1061(e)(2).

■ Implicitly conceding that the text of the statute authorizes the conclusion that, for accrual purposes, an employer may not exclude years of service based on a plan's pre-ERISA break in service rules, the PTF criticizes this reading as dangerous "literalism" based upon "a lacuna in a complex and highly reticulated statute." Defendant–Appellant–Cross–Appellee's Brief, p. 19. The PTF contends that this reading renders superfluous § 211(e), which contains transitional rules relating to both the vesting and accrual of benefits. The PTF also argues that this conclusion is inconsistent with that of other courts that have considered the question.

The PTF's arguments relating to ERISA § 211(e)(1)-(2), 29 U.S.C. § 1061(e)(1)-(2), do not convince us. The PTF points to two separate subsections of § 211—(e)(1)(A) and (e)(2)(A)—that treat accrued and vested benefits the same. Section 211(e)(1) prohibits the modification of break-in-service provisions as follows:

> No pension plan to which section 1052 of this title applies may make effective any plan amendment with respect to breaks in service (which amendment is made or becomes effective after January 1, 1974, and before the date on which section 1052 of this title first becomes effective with respect to such plan) which provides that any employee's participation in the plan would commence at any date later than the later of—
> (A) the date on which his participation would commence under the break in service rules of section 1052(b) of this title, or
> (B) the date on which his participation would commence under the plan as in effect on January 1, 1974.

ERISA § 211(e)(1), 29 U.S.C. § 1061(e)(1). Given that the language of § 211(e)(1)(A), which by its specific reference to § 202 pertains to accrued benefits, is virtually identical to § 211(e)(2)(A), which specifically pertains to vested benefits, the PTF contends that, with regard to pre-ERISA break-in-service provisions, Congress meant to treat accrual and vesting the same way throughout ERISA. If accrued benefits were not subject to pre-ERISA break-in-service provisions, the PTF argues, then there would be no need for Congress to prohibit changes of these provisions during the transitional period.

We are not persuaded. While ERISA § 202(b)(1) may have required McDonald's pre-ERISA break in service to be disregarded for accrual purposes, the section did not require all such breaks in service to be disregarded. ERISA §§ 202(b)(2–4(A)), 29 U.S.C. § 1052(b)(2–4(A)). In any event, § 211(e)(1) did not prohibit amendments to the pre-ERISA break-in-service provisions of the sort that § 202 would nullify as of its effective date in 1976. Rather, § 211(e)(1) merely prohibited plans from amending their break-in-service rules *during the transitional period* to make accrual-related provisions less favorable to participants, unless the provisions were already more generous than § 202 would require. In other words, § 211(e)(1) was a narrow subsection that, for the purposes of accrued benefits, merely froze the break-in-service provisions that were in effect on January 1, 1974, by allowing only those amendments during the transitional period that would bring the provisions into compliance with § 202 in advance of its effective date in 1976. By instructing that a pension plan generally could not change its pre–1974 break-in-service provisions for accrual purposes during this two-year period, Congress prevented pension plans from enacting amendments during this period that would make deep cuts in accrued benefits. At the same time, by not immediately nullifying the pre-ERISA break-in-service provi-

sions for accrual purposes, Congress afforded pension plans two years to effect a transition to the new break-in-service standards of § 202.

We conclude that ERISA § 204(b) is clear. Congress has treated accrued benefits and vested benefits differently. The Supreme Court has found ERISA to be "an intricate, comprehensive statute." *Boggs v. Boggs,* 520 U.S. 833, 841, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). ERISA is a complicated enough statute without the courts soldering new sections onto it; had Congress intended to permit pre-ERISA break-in-service provisions to apply when calculating accrued benefits, it could have done so. *See* ERISA § 203(b)(1)(F), 29 U.S.C. § 1053(b)(1)(F). Consequently, we respectfully decline to join the Seventh Circuit's refusal "to treat vesting and accrual of benefits differently with respect to breaks in service." *Jones v. UOP,* 16 F.3d 141, 143 (7th Cir.1994). Nor do we agree with that same conclusion implicit in the Third Circuit's decision in *Haas & Cass v. Boeing Co.,* No. CA 90–7414, 1992 WL 221335, 1992 U.S. Dist. LEXIS 13240 (E.D.Pa. Sept.4, 1992), *aff'd without op.,* 993 F.2d 877 (3d Cir.1993). *See also Redmond v. Burlington Northern R.R. Co. Pension Plan,* 821 F.2d 461, 466–67 (8th Cir.1987).

Finally, we share the PTF's belief that the reference to the "secondary sources"—letters from the Department of Justice and Internal Revenue Service and regulations from the Department of Treasury and Department of Labor—that McDonald invites is unnecessary. Our conclusion that Congress intended to treat accrued benefits and vested benefits differently with regard to pre-ERISA breaks in service is grounded in text we find to be unambiguous. Accordingly, we affirm the district court's decision that the PTF could not use the Plan's pre-ERISA break-in-service provision to limit McDonald's accrued benefits.

**B. Calculating Years of Service**

Section 204(b)(4)(A) requires plans, for purposes of determining accrued benefits, to include all years that ERISA § 202(b) counts for participation purposes. And § 202(b) requires that all "years of service" be taken into account. Section 202(a)(3)(A) defines a "year of service" as follows:

> For purposes of this section, the term "year of service" means a 12–month period during which the employee has not less than 1,000 hours of service. For purposes of this paragraph, computation of any 12–month period shall be made with reference to the date on which the employee's employment commenced, except that, in accordance with regulations prescribed by the Secretary [of Labor], such computation may be made by reference to the first day of a plan year in the case of an employee who does not complete 1,000 hours of service during the 12–month period beginning on the date his employment commenced.

29 U.S.C. § 1052(a)(3)(A).

By contrast, the Plan defines a "year of credited service" as follows:

> (1) for years prior to October 1, 1978, any year in which a participant had at least 400 hours of employment in the industry provided that such participant had an average of 700 hours employment per year during such years prior to October 1, 1978 and provided further no credit shall be given for any year(s) of employment occurring prior to a break in service which break in service occurred prior to January 1, 1976; and
>
> (2) commencing October 1, 1978, any year in which a participant has at least 700 hours of service.

■ Although, as we have discussed above, the Plan's pre-ERISA break-in-service provision does not apply to accrued benefits, there remains the question of whether ERISA requires the PTF to credit McDonald with any years of service prior to 1973, given that ERISA only requires that benefits accrue for years in which an employee works at least 1,000 hours. The PTF argues on appeal, although it did not do so before the district court, that the district court should have applied ERISA's stricter 1,000–hour definition of "year of service"-rather than the Plan's more lenient 400–hour "year of credited service" definition—in analyzing whether McDonald is entitled to additional benefits. Specifically, the PTF contends that only three of McDonald's 13 years of pre–1973 employment were 1,000–hour years, and each directly preceded a greater number of fewer–than–1,000–hour years. Under ERISA § 202(b)(4)'s "rule of parity," applicable to McDonald's pre-ERISA years of service:

> years of service with the employer or employers maintaining the plan before a break in service shall not be required to be taken into account in computing the period of service ... if the number of consecutive 1–year breaks in service equals or exceeds the aggregate number of such years of service before such break. Such aggregate number of years of service before such break shall be deemed not to include any years of service not required to be taken into account under this paragraph by reason of any prior break in service.

See Pub.L. No. 93–406, 88 Stat. 829, 854 (1974). Thus, the PTF argues, none of McDonald's 13 years of pre–1973 employment counted as "years of service" under ERISA's rule of parity, and, consequently, McDonald is not entitled to relief.[6] The question, then, is whether, when we have invalidated the Plan's break-in-service provision for accrual purposes, we must (1) enforce all of the remaining Plan provisions or (2) merely ensure that ERISA's minimum accrued-benefit standards have been met.

■ Although the PTF's arguments on this issue were not made to the district court, an appellate court "is not limited to the particular legal theories advanced by the parties but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). In *Kamen*, the Supreme Court found that while the appellant failed to advert to the governing state law until her reply brief at the circuit-court level, the appellant did not waive her right to have the applicable law applied to her case. *Id.; see also Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990) (addressing a legal question that the parties had not argued); *cf. Baker v. Dorfman*, 239 F.3d 415, 420–21 (2d Cir.2000). Similarly, the parties here are entitled to a resolution in this case that accommodates all relevant portions of ERISA.

Neither party disputes that a plan's terms may define a "year of service" more generously than ERISA § 202(a)(3)(A) does. We are concerned, however, with the effects of nullifying the Plan's break-in-service provision with regard to pre-

---

**6.** The PTF also argues that it should not be penalized for creating a more generous definition of "year of credited service" than ERISA requires, when that generosity was predicated upon the misunderstanding that ERISA treated accrued benefits and vested benefits the same way with regard to pre-ERISA breaks in service. As we are remanding this issue to the district court, we need not weigh the merits of this argument nor McDonald's rejoinder at oral argument that *"dura lex, sed lex "*; "the law is hard, but it is the law."

ERISA benefit accrual and leaving the Plan's 400–hour "year of credited service" definition to stand on its own, when under the terms of ERISA itself the PTF was not required to recognize any of McDonald's pre–1973 service. The PTF argues that its break-in-service provision was inextricably intertwined with its definition of a "year of credited service." Because longshoremen's work is somewhat transient, the PTF contends that its objective under the Plan was to reward those who worked steadily over the course of many years by permitting such workers to qualify for a year of credited service by working only 400 hours. If the Plan had not included a break-in-service provision concerning benefit accrual, the PTF contends that it never would have adopted such a low threshold.

Given this argument, the propriety of the enforcement of the 400–hour "year of credited service" definition in the absence of the Plan's break-in-service provision may involve the consideration of issues—possibly factual ones—regarding the relationship of these two plan provisions. Because such issues cannot be fully explored based upon the record before us, however, we conclude that this question is best addressed in the first instance by the district court. We therefore vacate the district court's (1) order for the PTF to retroactively amend the Plan and (2) award of additional benefits to McDonald. We remand the issue of the applicability of the 1,000–hour standard for its consideration, in light of ERISA's nullification of the break-in-service provision with regard to accrued benefits.

## C.  Similarly–Situated Plan Participants

■   When the district court granted relief under ERISA § 502(a)(3) and ordered the Trustees to reform the Plan retroactively to 1976, McDonald requested that the court also order the recalculation of the pensions of a class of purportedly similarly situated participants. With regard to McDonald's successful claim that ERISA invalidated pre-ERISA break-in-service provisions for the purposes of benefit accrual, however, the complaint expressly sought only individual relief. The district court denied McDonald's motion for class certification for the reason that "while plaintiff might have brought such a claim, he did not." *McDonald II*, 2001 WL 1154630, at *2, 2001 U.S. Dist. LEXIS 15534, at *6.

McDonald, however, contends that classwide relief is essentially automatic under ERISA § 502(a)(3), which provides that a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). McDonald argues that because § 502(a)(3) pertains to a general category of wrongs, the redress also must be general and must "remedy the injuries suffered by *all* participants affected by the wrongful 'act or practice.'" (Plaintiff–Appellee–Cross–Appellant's Br., at 14 (emphasis in original)).

McDonald reads too much into § 502(a)(3). It does not require district courts to grant particular relief; rather, it affords district courts the discretion to fashion appropriate equitable relief—relief that may or may not benefit non-party beneficiaries. Nothing in this section requires class-based relief or expressly supersedes the requirements of Federal Rule of Civil Procedure 23. *See, e.g., Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196 (2d Cir.2001). The

district court recognized the tension generated by McDonald's late request, finding his "attempt to transform what was clearly an individual claim into a class claim after a favorable decision on the merits troubling." *McDonald II*, 2001 WL 1154630, at *3, 2001 U.S. Dist. LEXIS 15534, at *6. These misgivings were understandable; Rule 23(c)(1) contemplates consideration of class certification "[a]s soon as practicable after the commencement of an action brought as a class action."

While relief to other beneficiaries may sometimes be appropriate under § 502(a)(3), it is clear to us that in this case the district court's decisions neither to certify a class nor to afford relief to beneficiaries who were not parties involved no abuse of discretion. The rationale behind early attention to the universe of potential beneficiaries "is plain: fundamental fairness requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable for money damages." *Siskind v. Sperry Ret. Program*, 47 F.3d 498, 503 (2d Cir.1995).

### D. Alleged Violation of ERISA's Minimal Accrual Standards

ERISA requires pension plans to satisfy one of three benefit-accrual formulae. ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C). Moreover, with respect to pre-ERISA service, a plan beneficiary must receive accrued benefits that are no less than the greater of (i) his accrued benefits under the terms of the plan or (ii) one-half the accrued benefits he would have received under one of the three acceptable formulae. ERISA § 204(b)(1)(D), 29 U.S.C. § 1054(b)(1)(D); *see also Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*, 964 F.Supp. 677, 684 (E.D.N.Y.1997) (one-half of the post-ERISA accrual rate under any

one of ERISA's accrual formulae satisfies pre-ERISA accrual requirements of ERISA § 204(b)(1)(D)(ii)).

In this case, the Plan provided for accrued benefits of three percent of the maximum retirement benefits available per year of post-ERISA service, meaning that an employee with 33 and 1/3 years of post-ERISA service would earn 100 percent of these benefits. Such a plan follows an appropriate benefits formula under ERISA § 204(b)(1)(A). 29 U.S.C. § 1054(b)(1)(A). Likewise, the Plan provided for accrued benefits of 1.5 percent per year of pre-ERISA service, one-half the percentage of benefits under the appropriate post-ERISA benefits formula and thus appropriate under ERISA § 204(b)(1)(D). 29 U.S.C. § 1054(b)(1)(D). As the district court correctly noted, neither the Plan's approach to pre-ERISA service nor its approach to post-ERISA service violates ERISA's minimal accrual standards, because the Plan provided McDonald with "precisely the accrual required by ERISA and its implementing regulations, not a penny more or less." *McDonald I*, 153 F.Supp.2d at 295 n. 42.

### E. Penalty for Delay in Production

ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), authorizes the imposition of statutory penalties upon the PTF for its failure to produce certain documents that McDonald requested pursuant to ERISA § 104(b)(4), U.S.C. § 1024(b)(4). On appeal, McDonald challenges the district court's calculation of the length of the PTF's delay in providing him with an updated summary plan description ("SPD"). We review this calculation for abuse of discretion. *See* ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).

Upon request, a plan administrator must "furnish a copy of the latest updated summary plan description" and "other instru-

ments under which the plan is established or operated." ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). McDonald's counsel first requested the Plan's "current" SPD in a September 21, 1998 letter. The PTF promptly delivered a copy of the 1992 SPD, the most recent one available at the time. In an October 21, 1998 letter, McDonald's counsel asked for an updated SPD, and the PTF had 30 days in which to deliver it. ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). Despite the October 21, 1998 request, the PTF did not sent McDonald or his counsel an updated SPD by November 21, 1998. In January 1999, the PTF mailed an updated SPD to McDonald and the other plan participants.

The district court properly found—and the PTF concedes—that it failed to produce timely an SPD that reflected amendments made within the preceding five years and thus violated ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(4). *McDonald II,* 2001 WL 1154630, at *6, 2001 U.S. Dist. LEXIS 15534, at *17. The district court further determined that the delay lasted 71 days, from November 21, 1998, until January 31, 1999, the last day of the month in which the PTF mailed an updated copy to plan participants. The district court fixed a penalty of $15 per day and awarded McDonald $1,065 for this delay. On appeal, McDonald maintains that the length of the delay was 417 days and that the district court should have calculated the penalty accordingly. We disagree.

■ The imposition of penalties for violating ERISA § 104(b)(4) is left to the discretion of the district court. *See Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 90 (2d Cir.2001) (stating that "the ultimate assessment of penalties is a discretionary matter for the district court"). Awards of penalties and their amounts depend on the following:

(1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant or beneficiary.

*Austin v. Ford,* No. 95 Civ. 3730, 1998 WL 88744, at *6 (S.D.N.Y. Mar.2, 1998); *see also Devlin,* 274 F.3d at 90.

Although McDonald did not receive the SPD until October 1999, the district court found that a portion of the delay occurred because McDonald had supplied an incorrect mailing address and the data processor that the PTF had hired failed to correct the address despite the PTF's instructions to do so. Given these facts and the absence of aggravating factors such as bad faith, prejudice, or multiple requests for the information, we conclude that the district court's calculation of the appropriate penalty fell easily within its discretion. *See, e.g., Demery v. Extebank Deferred Compensation Plan (B),* 216 F.3d 283, 290 (2d Cir.2000).

F. Reasonableness of Copying Expenses

■ ERISA § 104(b)(4) entitles McDonald to copies of Plan documents at a "reasonable charge." 29 U.S.C. § 1024(b)(4). A Department of Labor regulation defines a reasonable charge as follows:

Reasonableness. The charge assessed by the plan administrator to cover the costs of furnishing documents is reasonable if it is equal to the actual cost per page to the plan for the least expensive means of acceptable reproduction, but in no event may such charge exceed 25 cents per page.

29 C.F.R. § 2520.104b–30(b). In this case, the PTF charged McDonald $30.45 for

copying documents at a price of $0.15 per page. The district court found Mc-Donald's persistence on this issue "vexatious and unprofessional," *McDonald I*, 153 F.Supp.2d at 291, because of the small amount of money involved. While we are sympathetic to the district court's frustration, we conclude that McDonald, while arguably "vexatious," was technically correct, and the issue might recur.

The applicable regulation ties "reasonable cost" to "actual cost." 29 C.F.R. § 2520.104b-30. If, as here, a pension plan does not provide *any* evidence of its "actual costs," courts have no foundation for determining if the costs that the plan assesses are, in fact, reasonable. We recognize that in many instances the determination of "actual costs" will necessarily be somewhat imprecise and that the appropriate pursuit of precision may depend on the amount involved. Still, 29 C.F.R. § 2520.104b-30 calls for evidence of "actual costs." Accordingly, we remand for additional consideration by the district court.

## CONCLUSION

We conclude:

(1) ERISA nullified the Plan's break-in-service provision with regard to pre-ERISA benefit accrual;

(2) the district court must determine the applicability of ERISA's 1,000-hour definition of "year of service" with regard to the remaining Plan provisions and to the possible retroactive amendment of the Plan;

(3) the district court's denial of class-wide relief was not an abuse of discretion;

(4) the Plan did not violate ERISA's minimal accrual standards;

(5) the district court's calculation of penalties was not an abuse of discretion; and

(6) the PTF's claim for document reproduction costs requires evidence of actual cost.

Accordingly, we affirm in part, reverse in part, and vacate and remand in part for further proceedings consistent with this opinion.