*413
SUMMARY ORDER

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be REVERSED in part, VACATED in part, and REMANDED.
Roger Klimbach (“Mr. Klimbach”), deceased, purchased life insurance from his employer, defendant Spherion Corporation (“Spherion”). Defendant Aetna Health, Inc. (“Aetna”) issued the group insurance policy that provided benefits under the Spherion life insurance plan (the “Plan”). The beneficiary of the insurance, Mr. Klimbach’s widow, Rose Marie Klimbach (“Mrs. Klimbach”), brought suit against Spherion and Aetna under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), alleging that the calculation of the insurance benefit due to her was arbitrary and capricious. Mrs. Klimbach now appeals the decision and order of the United States District Court for the Western District of New York (Telesca, /.), granting summary judgment in favor of Spherion and Aetna. We assume the parties’ familiarity with the facts, procedural background and issues presented for review.
We review a district court’s grant of summary judgment de novo. See Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999).
Both parties concede that the benefit calculation is governed by the Plan’s summary description (“Summary”), which affords beneficiaries up to three times the greater of either the purchasing employee’s “current gross salary” or “prior year’s gross earnings.” Mrs. Klimbach argues that, pursuant to Mr. Klimbach’s election, the benefit under the Plan should be three times her husband’s “salary” in the year of his death, computed by multiplying his hourly wage ($21) by the 2080 hours he would have worked in full-time employment—i.e., $132,000 [adjusted to next thousand]. Spherion argues that because Mr. Klimbach was an hourly employee, his “current gross salary” was computed by annualizing the compensation he was paid in the calendar year he died. Because Mr. Klimbach worked no hours in the calendar year in which he died due to his illness, Spherion argues that he had no “current gross salary,” and that the benefit due Ms. Klimbach is three times his actual earnings in the prior year ($10,023.25 x 3 = $31,000 [adjusted to next thousand]).
Under § 502(a)(1)(B), the claim of a life-insurance plan beneficiary is limited to “benefits due to him under the terms of his plan.” The only representations that matter are those in the life insurance plan itself and in the summary plan description. See 29 U.S.C. § 1102(a)(1); Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir.1988) (“Congress intended that plan documents and the [summary plan descriptions] exclusively govern an employer’s obligations under ERISA plans.”).
In determining whether insurance plan administrators have properly interpreted the plan documents, we first must decide whether the wording of those documents is ambiguous, see O’Neil v. Retirement Plan for Salaried Employees of RKO Gen., 37 F.3d 55, 58-59 (2d Cir.1994); see also Care Travel Co. v. Pan Am. World Airways, 944 F.2d 983, 988 (2d Cir.1991). If the wording carries an unambiguous meaning, that controls. If not, we must decide whether the party making the interpretation has discretion to interpret the terms. See O’Neil, 37 F.3d at 59. If it does, we review the interpretation for arbitrariness and caprice. Id. In determining whether an interpretation of ambiguous language is arbitrary and capricious, we may rely on extrinsic evidence, see Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir.1990), so long as that evidence is on the administrative record, see Miller v. United Welfare Fund, 72 F.3d 1066, 1071 *414 (2d Cir.1995). If the ambiguity persists after consideration of this extrinsic evidence, and “it is necessary for [us] to choose between two competing yet reasonable interpretations of [the plan],” then “[we] must accept that offered by the administrators.” Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir.1995).
According to the Plan, benefits are calculated as a multiple of an employee’s “basic annual earnings, as determined by your employer.” The Summary, under the heading “Voluntary Life Insurance,” reads as follows:
As with your Basic Life insurance, your salary is generally defined as your prior year’s gross earnings or your current gross salary, whichever is greater. Your prior year’s gross earnings include bonuses and commissions.
We conclude that the foregoing provisions are ambiguous. The wording “basic annual earnings” is not self-defining, and is nowhere defined. The Summary only deepens the ambiguity, since it undertakes (1) to describe “Voluntary Life Insurance,” a benefit nowhere mentioned in the Plan itself (which discusses only “Basic” and “Supplemental” coverages), and (2) to define the term “salary” rather than the term “basic annual earnings” that is used in the Plan. Moreover, the Summary’s definition of “salary” in terms of “gross salary” and “gross earnings” is circular and unhelpful.
Although the terms defining benefits under the Plan are thus ambiguous, the Plan language (“as determined by your Employer”) does grant discretion to Spherion. The arbitrary and capricious standard therefore governs our review of Spherion’s interpretation of the Plan’s benefits-defining terms.
For the following reasons, we find Spherion’s interpretation arbitrary and capricious:
(i) According to Spherion, (a) the formula for computing the benefit owed under the Plan is found in the Summary’s definition of the word “salary” and (b) Mr. Klimbach had no salary, and therefore no “gross salary.” Spherion endeavors to reconcile these incompatible positions by explaining that even though hourly employees (such as Mr. Klimbach) had no “gross salary,” Spherion calculated an hourly employee’s “current gross salary” for benefits purposes by annualizing the hours he actually worked in the calendar year in which he died. That explanation does not resolve the incompatible positions adopted by Spherion, and bespeaks improvisation.
(ii) Spherion’s ex post method for calculating the benefits due hourly employees results in great disparities in benefit amounts depending on the employee’s health, work schedule, etc., in the year of and preceding death. This approach is at odds with the method that Spherion asserts it employed to calculate premiums—i.e., an ex ante fixed calculation “based on a projection of earnings based on annualizing an hourly employee’s hourly rate.” Such a disjuncture between the methods for calculating benefits and premiums may be reasonable in certain circumstances; however, Spherion’s argument that hourly employees had no salary loses its nominal persuasive force when considered in light of the company’s admission that it was using just such a salary for the purpose of assessing premiums.
(iii) The Plan itself directly contradicts Spherion’s contention that the “death benefit was not based on the same annu *415 alization” as the premium calculation. The Plan states that “[e]ach premium due during the policy year will be figured by multiplying the amount of insurance in force at the start of the premium-paying period by the premium rate.” (Emphasis added).[1] This language strongly suggests that premiums and benefits were based on the same principle of annualization. And since Spherion admits that premiums were calculated “based on a projection of earnings based on annualizing an hourly employee’s hourly rate,” the logical interpretation of the Plan language is that benefits were calculated in the same way. (The Plan language is confirmed by an e-mail that a Spherion “Benefits Administration Specialist,” Cindy Dieringer, sent on September 26, 2001—six months before Mr. Klimbach’s death— calculating Mr. Klimbach’s “life coverage” as if he had an annual salary.)
In this light, we conclude that the only reasonable interpretation of the Plan and Summary language is that Mrs. Klimbach was due a benefit of $132,000, and that Spherion’s interpretation was therefore arbitrary and capricious.
Because we have decided in favor of Mrs. Klimbach on her ERISA § 502(a)(1)(B) claim, we need not consider her equitable estoppel claim.
For the reasons stated above, the judgment in favor of Spherion is vacated, and the case is remanded to the district court to enter summary judgment in favor of Mrs. Klimbach as against Spherion. Such judgment is to reflect the district court’s discretionary determinations as to whether (i) to allow attorney’s fees under 29 U.S.C. § 1132(g)(1), see Salovaara v. Eckert, 222 F.3d 19, 27-28 (2d Cir.2000); see also Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 872 (2d Cir. 1987) (“ERISA’s attorney’s fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights.”), and (ii) to award prejudgment interest, see Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139-40 (2d Cir.2000).
As to Aetna, we see nothing arbitrary and capricious about the manner in which it performed its largely ministerial task of making a benefits calculation based on the annual earnings reported by Spherion. We therefore agree that the grant of summary judgment in favor of Aetna was sound. At the same time, Aetna—as a fiduciary—has a further role to play in the implementation of the judgment against Spherion. We therefore vacate the district court’s judgment in favor of Aetna as well, without prejudice to ultimate dismissal when appropriate relief has been framed or sufficient undertakings given.
Spherion is to bear the costs of this appeal.

. The form of this document in evidence is from 2000 rather than 2001, but no party contends that this is material.