*20 SUMMARY ORDER
Plaintiff-Appellant Pickreign (“Pickreign”) appeals from the June 12, 2008, 2008 WL 3455447, decision of the District Court for the Northern District of New York (Homer, M.J.),[1] which, after a bench trial, rejected Pickreign’s claim that he is entitled to a pension from DefendantsAppellees, Larry S. Bulman, as Trustee of the United Association of Plumbers Local 773 Pension Plan, et al. (the “Trustees”). On appeal, Pickreign makes two principal arguments: (1) by virtue of the 773 Pension Plan’s (the “Plan”) hour-bank provision, Pickreign’s break in service occurred after June 1, 1976, when the required period for vesting became ten years of service, and hence, he was vested before his break-in-service; and (2) alternatively, Pickreign accumulated sufficient excess hours of credited service from 1963 through 1975 such that he met the vesting requirement applicable to a break-in-service before June 1, 1976, i.e., 15 years of credited service. We assume the parties’ familiarity with the underlying facts, procedural history, and the issues presented for review.
Where, as here, “the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator’s ultimate conclusion unless it is ‘arbitrary and capricious.’ ” Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir.1995). Section 16.13 of the Plan provides that the “B[oa]rd of Trustees shall have exclusive authority and discretion to: A. determine whether an individual is eligible for any benefits under this Plan ... C..interpret all of the provisions of this Plan; and D. interpret all of the terms used in this Plan.” We have set forth the standard of review in this context as follows:
[Wjhere the plan grants the administrator discretionary authority to determine eligibility benefits, a deferential standard of review is appropriate. Under the deferential standard, a court may not overturn the administrator’s denial of benefits unless its actions are found to be arbitrary and capricious, meaning without reason, unsupported by substantial evidence or erroneous as a matter of law. Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator’s interpretation must be allowed to control. Nevertheless, where the administrator imposes a standard not required by the plan’s provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious.
McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132-33 (2d Cir.2008) (internal quotation marks and citations omitted). “This scope of review is narrow, thus we are not free to substitute our own judgment for that of the [Trustees] as if we were considering the issue of eligibility anew.” Pagan, 52 F.3d at 442. In sum, this Court “ ‘may not upset a reasonable interpretation by the administrator.’ ” Id. (quoting Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir.1995)).
ERISA “explicitly allows pension plans to apply break-in-service provisions to the calculation of vested benefits arising from pre-ERISA service.” McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund, 320 F.3d 151, 157 (2d Cir.2003); see also 29 U.S.C. § 1053(b)(“(1) In computing *21 the period of service under the Plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee’s years of service with the employer or employers maintaining the Plan shall be taken into account, except that the following may be disregarded: ... (F) years of service before this part first applies to the Plan if such service would have been disregarded under the rules of the Plan with regard to breaks in service, as in effect on the applicable date....”). Because ERISA first applied on January 1, 1976, see McDonald, 320 F.3d at 157, and Pickreign’s last covered employment was May 31, 1975, and hence his employment was “pre-ERISA service,” id., such employment may be “disregarded under the rules of the Plan with regard to breaks in service.... ” 29 U.S.C. § 1053(b)(1)(F). Indeed, Piekreign concedes as much. Appellant’s Br. 8. Thus, we turn to the rules set forth in the Plan.
In the section entitled “BREAK IN SERVICE BEFORE JUNE 1, 1976,” the Plan provides as follows:
If an Employee did not earn any Pension Service during a Plan Year ... before June 1, 1976, then he shall have incurred a Break in Service and all of the Employee’s Pension Service and Vesting Service earned before the end of such Plan Year shall be forfeited unless the Break in Service occurred after he was vested.
J.A. 278, § 4.02. Further, a participant “shall be considered vested at the earliest date from June 1, 1974 to May 31, 1976 on which he ... had at least 15 years of Pension Service.” Id., § 4.05. As for vesting after May 31, 1976, and before June 1, 1990, the participant “shall be considered vested at the earliest date on which he ... has at least 10 years of Vesting Service.” Id. 279, § 4.07.
Pickreign’s first argument is that, assuming he had less than 15 years of Pension Service required for vesting from June 1, 1974, to May 31, 1976, he is still eligible for a pension because his break-in-service occurred after May 31, 1976, and thus, he only needed 10 years of Vesting Service to become vested. Although Piekreign stopped working under the Plan before May 31, 1976 — namely, as of May 31, 1975 — Pickreign’s argument runs that his break-in-service occurred after May 31, 1976, because he carried forward credited service under the Plan’s hour-bank provision, section 3.05.
We find, however, that the Trustee’s interpretation of the Plan — whereby the hour-bank provision may not be used to earn Pension Service within the meaning of the break-in-service provision, section 4.02 — is reasonable. Thus, we defer to it. See McCauley, 551 F.3d at 132; Pagan, 52 F.3d at 442 (“[W]e are not free to substitute our own judgment for that of the [Trustees] as if we were considering the issue of eligibility anew.”). Under the Trustee’s reasonable interpretation of the Plan, Piekreign had a break-in-service before June 1, 1976, and therefore required 15 years of credited service to vest. Thus, the district court appropriately rejected Pickreign’s first argument.
Pickreign’s second argument is that, even if he is subject to the 15-year requirement for vesting, “by virtue of the unlimited hour bank,” Appellant’s Br. 10, he has accumulated sufficient credit for excess hours to reach the 15-year threshold. While the 1985 version of the Plan explicitly states under section 3.04 that “[n]o more than one year of Pension Service may be earned by an Employee in any one Plan Year,” Piekreign points out that the 1994 version of the Plan — -in effect when he submitted his application for benefits — does not include such a limitation. *22 However, the 1994 Plan is at least ambiguous as to whether an employee could accrue unlimited hours of Pension Service prior to May 31, 1985. The Plan’s only mention of limitations on yearly Pension Service is as follows:
3.03 AFTER May 31, 1985 and before June 1, 1990, the amount of credited Pension Service for each Plan Year cannot exceed 1.3 years.
3.04 AFTER May 31, 1995, there is no limitation of earning said Pension service.
These provisions do not address the presence of a limitation for work performed prior to May 31, 1985, leaving the issue ambiguous. If anything, the explicit statement that there is no limitation after May 31, 1995, suggests that, if there were similarly no limitation before May 31, 1985, an explicit statement would have been provided.
It is clear that “the presentation of extrinsic evidence to clarify the ambiguous terms of an ERISA ... plan” is permissible. Gibbs ex rel. Estate of Gibbs v. CIGNA Corp., 440 F.3d 571, 579 (2d Cir.2006); see also Klimbach v. Spherion Corp., 175 Fed.Appx. 412, 413 (2d Cir.2006) (“In determining whether ... plan administrators have properly interpreted the plan documents,” and “whether an interpretation of ambiguous language is arbitrary and capricious, we may rely on extrinsic evidence.”). Here, the Trustees have provided a wealth of evidence that the absence of the one-year limit from the 1994 version of the Plan was inadvertent. The Summary Plan Descriptions of 1979, 1997, 1999, and 2002 all provide the limitation set forth in the 1985 version of the Plan. The Plan’s actuarial valuation reports effective in 1985, 1990, and 1999 contain the same limitation, and such reports are certified as based on the Plan’s rules in effect on those dates. Moreover, Laurence Gonelly, the Plan Manager from 2001 through the time of trial in 2008, testified that he was unaware that the 1994 version of the Plan omitted the one-year limitation until Pickreign’s case. Further, he testified that the practice of the Plan is to impose a limitation of one year of credited service per plan year for employment prior to May 31, 1985. Steven Thomas, the Plan’s actuary since the late 1980s, likewise testified that the omission of the one-year limitation was inadvertent, and further, that such a change would lead to a significant increase in the liability of the Plan. He also testified that although he had been to every Trustee meeting, he was unaware of any affirmative action taken to delete the provision, and he was never asked to consider its deletion.
Considering the foregoing evidence, which Pickreign does not contest on appeal, we agree with the district court that “the absence of [the one-year limitation] in the Plan itself does not conflict with the [1997 Summary Plan Description] and the Trustees’ interpretation of that Plan and its Summary as limiting credit to one year is entitled to deference.” Thus, because Pickreign was limited to one year of Pension Service for each plan year of covered employment, his argument that he reached the 15-year vesting requirement by accumulating excess hours lacks merit.
We have considered all of Pickreign’s contentions and find them to be without merit. Therefore, the district court’s grant of judgment to the Trustees is AFFIRMED.

. The parlies consented to have United States Magistrate Judge Homer conduct all proceedings and enter judgment in this matter.