*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IRA O. KELLEY,

Plaintiff-Appellant,

v

GENERAL MOTORS, LLC,

Defendant-Appellee.

FOR PUBLICATION
January 14, 2021
9:00 a.m.

No. 344005
MCAC
LC No. 17-000039

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

TUKEL, J.

## I. INTRODUCTION

Over time, public policy has evolved in Michigan regarding the "coordination" of some social welfare benefits. "Coordination" refers to the approach by which "an employer paying workers' compensation obligations may set off a portion of certain other benefits, such as pensions and social security payments, also received by the employee and financed by the employer." *Reidenbach v City of Kalamazoo*, 327 Mich App 174, 183; 933 NW2d 335 (2019) (quotation marks and citation omitted). Our Supreme Court has noted the history and legal development of coordination:

> Because most social legislation in Michigan was implemented in unrelated fragments, failure to coordinate resulted in an accumulation of benefits. For example, before coordination, it was not unusual for an employee to collect both unemployment and worker's compensation benefits at the same time. However, if an employee undergoes a period of wage loss, it does not follow that he should receive multiple wage loss benefits simultaneously. An employee can experience only one wage loss and, in any logical or coherent system, should receive only one wage-loss benefit at any one time. [*Drouillard v Stroh Brewery Co*, 449 Mich 293, 299; 536 NW2d 530, 533 (1995) (citation omitted).]

Thus, "[a]fter discovering that many employers were paying more than once to compensate a disabled employee's lost earning potential when that employee was also receiving disability

-1-

pension benefits, the Legislature, in 1981, enacted MCL 418.354." *Arbuckle v Gen Motors LLC,* 499 Mich 521, 526; 885 NW2d 232 (2016).

> The statute permits an employer to reduce its obligation to pay an employee's weekly workers' compensation benefits by coordinating those benefits with that employee's disability pension benefits. Although the statute makes coordination mandatory by default, MCL 418.354(14) permits an employer to elect *not* to coordinate disability pension benefits in certain circumstances, such as when it negotiates an employment agreement that provides otherwise. *Id.*

The statute has another twist, beyond the default and opt-out positions: the legislature also provided that "disability insurance benefit payments under the social security act," more commonly referred to as Social Security Disability Insurance or SSDI benefits, shall be coordinated, but only if the social security act were to some day be amended in a particular manner in which, to date, it has not been so amended. MCL 418.354(11); see footnote 4 of this opinion.

All of that is a long way of bringing us to the question presented in this case. The current disability pension plan between the United Auto Workers, which represents plaintiff, and defendant, General Motors, includes SSDI payments as part of a formula for coordinating benefits. The formula, which has been incorporated in Collective Bargaining Agreements (CBAs) for a number of years, aggregates a disabled employee's various sources of disability income, and then, if the total exceeds the employee's average weekly wage, coordinates the benefits to reduce them; the formula limits the amount by which a benefit can be coordinated, by providing that the amount of the reduction shall not exceed the amount of the disability benefit. See notes 1 and 3 of this opinion. Plaintiff challenges the formula as unlawful under MCL 418.354(11); plaintiff argues that the formula improperly considers his SSDI benefits by combining them with other benefits to determine whether plaintiff has reached an average weekly wage cap. Essentially, plaintiff argues that the formula effectively uses his SSDI benefits to reduce his worker's compensation benefits in violation of MCL 418.354(11). It is plaintiff's position that if SSDI benefits were not included in the formula, as he asserts MCL 418.354(11) mandates, then his total income under the formula would be less than his average weekly wage and not subject to any coordination.[1]

---

[1] In other words, it is plaintiff's position that the statute protects his right to receive more than "one wage-loss benefit at any one time." *Drouillard*, 449 Mich at 299. Defendant argues that the formula actually protects plaintiff, because absent the formula all of his benefits would be subject to coordination, but the formula prohibits the amount of the reduction from exceeding the amount of the disability benefit. As *Arbuckle* noted, the formula "did not completely coordinate future retirees' benefits." 499 Mich at 235 n 9. "In short, a retiree who was subject to coordination under the new formula would, at least, still receive payments from defendant equal to his earnings before the injury that resulted in the disability benefits." *Id.* Because plaintiff's claim is preempted by federal law, we have no occasion to determine which position regarding MCL 418.354(11) is correct.

Although this case presents an interesting question of Michigan law regarding employee benefits, plaintiff's claim is preempted by § 301of the Labor Management Relations Act (LMRA), 29 USC 185(a), which requires that "the relationships created by [a collective-bargaining] agreement" be defined by application of "an evolving federal common law grounded in national labor policy." *Bowen v United States Postal Service*, 459 US 212, 224-225; 103 S Ct 588; 74 L Ed 2d 402 (1983). Thus, we need not consider whether MCL 418.354(11), in the abstract, operates in the manner in which plaintiff asserts because it simply is not available to him in this context involving a collective-bargaining agreement. Therefore, applying federal law, we affirm the judgment of the Michigan Compensation Appellate Commission (the Commission), which upheld defendant's coordination of plaintiff's benefits.

## II. PROCEDURAL HISTORY

Plaintiff appeals by leave granted the decision of the Commission.[2] Plaintiff's claim for unemployment benefits proceeded under a stipulated record. The magistrate agreed with plaintiff that MCL 418.354(11) prohibited consideration of SSDI benefits as part of the formula for coordinating plaintiff's benefits, ordering defendant to reimburse plaintiff for benefits wrongfully withheld. On appeal, the Commission concluded that defendant had not violated the statute, and reversed the magistrate's order to reimburse plaintiff. Plaintiff now appeals the Commission's decision, which we affirm, albeit for reasons that differ from those provided by the Commission.

## III. UNDERLYING FACTUAL HISTORY

Plaintiff was awarded workers' compensation benefits in 1990, and retired due to disability in 1992. At the time of his retirement, a 1990 Letter of Agreement, which was incorporated into a CBA involving plaintiff and defendant General Motors, barred coordination of benefits. In 2007, a Letter of Agreement was incorporated into the 2007 CBA, which for the first time resulted in some coordination of benefits, but only for "employees who are injured and retire on or after October 1, 2007," a class of employees which did not include plaintiff. In 2009, a new Letter of Agreement for the first time subjected plaintiff to coordination, because it applied to "all retirees who retired prior to January 1, 2010, regardless of their date of retirement or injury." As noted, the 2009 agreement contained a formula for computing the amount of benefit reduction, but also placed a cap on the amount by which benefits could be reduced. The formula included

---

[2] *Ira O Kelley v General Motors, LLC*, unpublished order of the Court of Appeals, entered December 10, 2018 (344405).

"consideration" of an employee's SSDI benefits.[3] As noted, it is plaintiff's contention that the consideration of those benefits runs afoul of MCL 418.354(11).[4]

On January 1, 2010, defendant began coordinating benefits, pursuant to the 2009 Letter of Agreement. On January 21, 2014, plaintiff began receiving Social Security retirement benefits, and consequently his eligibility for workers' compensation benefits ended. We need not detail the amounts involved in the application of the coordination formula in this particular case, but under it, plaintiff's workers' compensation benefits were reduced by $118.70 per week for just over four years, from January 1, 2010 until January 21, 2014, a period of approximately 211 weeks, for a total difference of approximately $25,000.[5] As noted, plaintiff argued below and maintains on appeal that the reduction of his benefits by that amount was in violation of MCL 418.354(11). In April 2010, he filed an application with the Michigan Administrative Hearings System Workers' Compensation Board of Magistrates, making those allegations. After a hearing on the stipulated facts, the magistrate agreed, ordering reimbursement to plaintiff of the reduced payments. Defendant appealed the magistrate's decision to the Michigan Compensation Appellate Commission (MCAC) and the MCAC found that defendant's coordination formula did not violate MCL 418.354(11). This appeal followed.

---

[3] Under the formula, plaintiff's weekly workers' compensation benefit, pension benefit, and Social Security Disability Insurance (SSDI) benefit were added together and compared to plaintiff's average weekly wage, and a "Yielded Coordination Rate" was produced, which could reduce an employee's workers' compensation benefits by a certain amount, but the amount of the reduction could not be "greater than the disability retirement benefit payable."

[4] That statute provides:

> Disability insurance benefit payments under the social security act shall be considered to be payments from funds provided by the employer and to be primary payments on the employer's obligation under section 301(7) or (8), 351, or 835 as old-age benefit payments under the social security act are considered pursuant to this section. The coordination of social security disability benefits shall commence on the date of the award certificate of the social security disability benefits. Any accrued social security disability benefits shall not be coordinated. However, social security disability insurance benefits shall only be so considered if section 224 of the social security act, 42 USC 424a, is revised so that a reduction of social security disability insurance benefits is not made because of the receipt of worker's compensation benefits by the employee.

[5] According to counsel, there are other retirees whose benefits were coordinated using the same formula, and who have filed claims which are at various stages of proceedings, asserting that MCL 418.354(11) prohibits such coordination.

## IV. STANDARD OF REVIEW

We review questions of law in a workers' compensation case, including the proper interpretation of a statute, de novo. *Arbuckle,* 499 Mich 531. Interpretation of a collective-bargaining agreement, like interpretation of any other contract, is also a question of law subject to de novo review. *Id.* A reviewing court interprets a collective-bargaining agreement "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *Id.* at 531-532.

## V. ANALYSIS

MCL 418.354(11), the statute on which plaintiff relies, provides that SSDI benefits shall be coordinated, but it further provides that it shall become operative only "if section 224 of the social security act, 42 USC 424a, is revised so that a reduction of social security disability insurance benefits is not made because of the receipt of worker's compensation benefits by the employee." See footnote 4 of this opinion. Thus, at present, MCL 418.354(1) is without operative effect and therefore does not mandate coordination of SSDI benefits, because it is undisputed that Congress has never amended section 224 of the social security act in the manner which would trigger the contingency in the statute. See *Arbuckle*, 499 Mich at 530 n 15. In *Arbuckle*, the plaintiff made precisely the same argument made here, in addition to a contractual claim. *Id.* The parties agree that, in *Arbuckle*, our Supreme Court did not address the question at issue in this case and they further agree generally that Michigan courts have never construed MCL 418.354(11). In fact, the entire premise of plaintiff's claim is that because *Arbuckle* did not decide the question, MCL 418.354(11) at least arguably affords him a remedy under Michigan law. However, plaintiff's position fails to consider the threshold issue of whether Michigan law applies to this case, and proper resolution of that threshold question is fatal to his claim.[6]

---

[6] In *Arbuckle*, our Supreme Court ordered supplemental briefing to address the question of "whether the plaintiff's action is governed by state law or federal law." *Arbuckle*, 499 Mich at 531; see *Arbuckle v Gen Motors LLC*, 498 Mich 956; 872 NW2d 492 (2015). We did not order such supplemental briefing in this case. The question of preemption was answered unanimously by our Supreme Court in *Arbuckle*, so it should have been apparent to the parties that it was an issue that merited their consideration in this case. Nevertheless, in its principal brief on appeal, plaintiff did not address the question of whether state or federal law applied. Defendant, in its brief, did raise the argument that "federal law might be considered controlling," and it made the argument that federal law requires the labor contract to be respected. While defendant may not have briefed the question as fully as warranted, it did nonetheless acknowledge the issue. Even though he filed a reply brief, however, plaintiff again failed to address the issue of whether state or federal law controlled, or to even acknowledge defendant's argument in that regard.

Nonetheless, the parties' positions in this regard do not control; even if they had argued that state law alone governed, we would not be bound by that approach if it was incorrect. In a similar case involving federal preemption of state law, in which the respondent "argues that petitioner waived her right to the application of anything other than a uniform federal rule of demand because she

-5-

## A. *ARBUCKLE* AND THE "THRESHOLD QUESTION"

In many respects, this case is simply a relitigation of *Arbuckle* by a different party, making it in material part factually and legally indistinguishable  The 2007 Letter of Agreement is the same Letter of Agreement that was at issue in *Arbuckle*; that Letter of Agreement for the first time permitted the coordination of benefits "for employees who are injured and retire on or after October 1, 2007," a category which included neither plaintiff Kelley nor the plaintiff in *Arbuckle*.[7] The 2009 collective bargaining agreement at issue here is the same collective bargaining agreement involved in *Arbuckle*;[8] the 2009 Letter of Agreement, which modified the 2007 Letter of Agreement, making the coordination of benefits applicable "to all retirees who retired prior to January 1, 2010," is the identical letter which modified the same agreement in *Arbuckle*, and which by its terms applies to plaintiff Kelley and to the plaintiff in *Arbuckle*;[9] and plaintiff's argument, relying on MCL 418.354(11), is one of the arguments that was advanced in *Arbuckle*.  *Arbuckle* ultimately held that the claim which was ruled upon was governed by federal law.  The obvious implication of the applicability of the same CBAs and Letters of Agreement is that *Arbuckle*'s holding that federal law controlled also prevails here.  Plaintiff tries to side-step that implication by noting that the Supreme Court did not reach the merits of the MCL 418.354(11) argument in *Arbuckle*.  It is true that the Supreme Court did not decide that question:

> Plaintiff also claimed that defendant's coordination-of-benefits formula illegally "considered" plaintiff's SSDI benefits to reduce his workers' compensation benefits in violation of MCL 418.354(11), which, as previously indicated, requires employers to "consider[ ]" a retiree's SSDI benefits as "payments from funds provided by the employer and to be primary payments on the employer's obligation as old-age benefit payments under the social security act are considered" in MCL

---

failed to advert to state law until her reply brief in the proceedings below," *Kamen v Kemper Fin Services, Inc*, 500 US 90, 99; 111 S Ct 1711; 114 L Ed 2d 152 (1991), the United States Supreme Court expressly held that "We disagree.  When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Id*. at 99.  The Supreme Court cited *Arcadia v Ohio Power Co,* 498 US 73; 111 S Ct 415; 112 L Ed 2d 374 (1990), in support of that point.  In *Arcadia*, Justice Stevens, in a concurrence, noted that "While I join the Court's opinion because I am persuaded that its interpretation of the statute is correct, I add this additional explanation of my vote because neither the parties, the interested agencies, nor the Court of Appeals considered the construction of § 318 that the Court adopts today." *Id*. at 86 (STEVENS, J. joined by MARSHALL, J., concurring).  Thus, it is clear that we have the independent power to apply federal law if it controls, regardless of whether or not the parties advanced that position.  As we read *Arbuckle*, it mandates the application of federal law in this circumstance.

[7] Compare Appellant's Index, at 21-22, with *Arbuckle*, 499 Mich at 527-528 and 528 n 9.

[8] Compare Appellant's Index, at 21-22, with *Arbuckle*, 499 Mich at 527-528 and 528 n 10.

[9] *Id*.

418.354(1)(a), but only if the Social Security Act has been amended in a particular way. [*Id*. at 530 n 15 (ellipses omitted).]

Our Supreme Court then held that "We decline to consider this question because plaintiff failed to adequately brief and argue the issue in this Court, thereby abandoning it." *Id*. (citation omitted).

Plaintiff treats that discussion as conclusive with respect to the argument that MCL 418.354(11) is available as a potential remedy in this case, and therefore, as noted, does not even address whether state or federal law applies. By doing so, plaintiff ignores the Supreme Court's disposition of the "threshold inquiry" in *Arbuckle*, *id* at 534:

A threshold question is whether plaintiff's claim of entitlement to uncoordinated workers' compensation benefits is actually a claim under § 301 of the federal Labor Management Relations Act (LMRA) and is, therefore, preempted by federal law. As part of this inquiry, we must determine whether we, as a state court, have jurisdiction to decide the merits of this case and, if so, whether state or federal law controls. [*Id.* at 532 (footnote omitted).]

*Arbuckle* noted that "state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements," *id*. at 533, citing *Charles Dowd Box Co v Courtney*, 368 US 502; 82 S Ct 519; 7 L Ed 2d 483 (1962), and that "state courts must apply federal law in deciding those claims," *id*., citing *Teamsters v Lucas Flour Co*, 369 US 95; 82 S Ct 571; 7 L Ed 2d 593 (1962). Thus, our Supreme Court held that "Although state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements, § 301 preempts state substantive law. '[S]tate courts must apply federal law in deciding those claims' because 'only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements.' " *Id.*, citing *United Steelworkers*, 495 US 362, 368; 110 S Ct 1904; 109 L Ed 2d 362 (1990).[10]

B. PREEMPTION UNDER § 301 OF THE LABOR MANAGEMENT RELATIONS ACT

Preemption under § 301 "occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract and when application of state law

---

[10] It is perhaps a bit confusing that our Supreme Court stated that the plaintiff in *Arbuckle* abandoned the argument that the defendant's "coordination-of-benefits formula illegally 'considered' plaintiff's SSDI benefits to reduce his workers' compensation benefits in violation of MCL 418.354(11)," *Arbuckle*, 499 Mich at 530 n 15, in light of the fact that federal law applied, and thus the Michigan statute could have played no role whatsoever in any analysis. The Court's statement that the argument was abandoned due to inadequate briefing appears at the beginning of its opinion where it sets out the arguments of the parties, prior to its discussion of any legal issue. It is therefore understandable that the Court dismissed the argument as being inadequately briefed without proceeding to the threshold legal issue because the plaintiff's position was not sufficiently developed for the Court to even consider it. We understand the Court to have been saying that plaintiff's briefing of the issue was inadequate for submission regardless of whether state or federal law controlled.

to a dispute requires the interpretation of a collective bargaining agreement." *Arbuckle*, 499 Mich at 534 (quotation marks and citation omitted). Although " 'a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law,' other state-law claims could still involve 'the meaning or scope of a term in a contract suit.' " *Id*. (citation and ellipses omitted). Those claims are likewise preempted by federal labor law. *Id*.

*Arbuckle* adopted a two-part test "for determining whether § 301 preemption occurs." Under that test, "[t]he court first 'examine[s] whether proof of the state law claim requires interpretation of collective bargaining agreement terms' and second, 'ascertain[s] whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.' " *Id*. at 535 (citation omitted). "If application of this test reveals a right that both arises from state law and does not require contract interpretation, then there is no preemption. However, 'if a state-law claim fails *either* of these two requirements, it is preempted by § 301.' " *Id*. (citations omitted).

Here, the claimed right arises from the collective bargaining agreement and MCL 418.354(11), a provision of state law. Thus, the operative question is whether resolution of this claim "does not require contract interpretation," because if it does not, "then there is no preemption." The question, then, boils down to the meaning of the term "contract interpretation" in this context.

## C. "INTERPRETATION" OF COLLECTIVE BARGAINING AGREEMENTS UNDER § 301

As noted, the United States Supreme Court has interpreted § 301 of the LMRA as requiring that "the relationships created by [a collective-bargaining] agreement" be defined by application of "an evolving federal common law grounded in national labor policy." *Bowen v United States Postal Service*, 459 US 212, 224-225; 103 S Ct 588, 596, 74 L Ed 2d 402 (1983). Indeed, as an initial matter, the mere fact that CBAs are to be governed by an evolving federal common law strongly suggests that statutory state law exceptions, such as plaintiff maintains that MCL 418.354(11) creates, must be preempted, as they would obviously be in derogation of a uniform, federal common law.

The Supreme Court has noted that the need for such a uniform federal common law arises because

> [T]he subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the

same meaning under two or more systems of law which might someday be invoked in enforcing the contract." [*Lucas Flour Co*, 369 US at 103-104.][11]

The Court in *Lucas Flour* further noted that "Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes." *Id*. at 104. If the position which plaintiff advocates here were the law, the possibilities referred to in *Lucas Flour* would become certainties; the CBA between the UAW and General Motors, which is a national contractual agreement, would have a different meaning in Michigan than it would elsewhere, based on MCL 418.354(11), and presumably would be subject to similar state law exceptions throughout the United States. In order to preclude such a possibility, "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Allis-Chalmers Corp v Lueck*, 471 US 202, 210; 105 S Ct 1904; 85 L Ed 2d 206 (1985).

In order to preclude such a possibility, the Supreme Court has read § 301 as preempting state law claims if "[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement." *Caterpillar Inc v Williams*, 482 US 386, 394; 107 S Ct 2425; 96 L Ed 2d 318 (1987) (citation omitted) (brackets and ellipses in original). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " *Electrical Workers v Hechler*, 481 US 851, 859, n 3; 107 S Ct 2161; 95 L Ed 2d 791 (1987). Thus,

> "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." [*Caterpillar Inc*, 482 US at 394 (citation omitted).]

Thus, although plaintiff claims a state cause of action under MCL 418.354(11) for breach of contract on the part of defendant, § 301 preempts that claim, rendering it "a creature of federal law," even though such a cause of action would exist under Michigan law in the absence of § 301.

Moreover, in holding that the claims at issue in *Arbuckle* involved the interpretation of the terms of the collective bargaining agreement, our Supreme Court noted that "[i]n order to determine whether [the] defendant was authorized to coordinate [the] plaintiff's workers' compensation benefits with his disability pension benefits, then, we must *necessarily interpret* the 1990 Letter of Agreement and the 1990 CBA as well as the parties' subsequent agreements permitting benefit coordination, which were incorporated into the then-existing CBAs." *Arbuckle*, 499 Mich at 536 (emphasis added). This was so even though such "interpretation" simply involved a plain-meaning application of the language "all retirees who retired prior to January 1, 2010, regardless of their date of retirement or injury," against the backdrop of federal rules of construction of collective bargaining agreements.

---

[11] *Arbuckle* cited and expressly relied on *Lucas Flour*. See *Arbuckle*, 499 Mich at 533.

In *Arbuckle*, the crux of the Court's reasoning was that

> Plaintiff cannot avoid the preemptive force of § 301 by arguing that only defendant's *defense* of coordination depended on interpretation of the CBA, whereas proof of plaintiff's claims does not. Resolution of plaintiff's state-law workers' compensation claim "is inextricably intertwined with consideration of the terms of the labor contract" because application of MCL 418.354(14) to the instant dispute " 'requires the interpretation of [the relevant] collective-bargaining agreement.' " [*Id*. at 537-538 (footnotes omitted).]

Thus, our Supreme Court concluded, "Because resolution of the underlying coordination claim requires the interpretation of the terms of a collective-bargaining agreement, [the] plaintiff's claim fails the first prong of the Sixth Circuit's preemption test. Plaintiff's claim, therefore, is preempted by § 301." *Id*. at 536.[12]

As plaintiff Kelley's claims rely on precisely the same agreements as in *Arbuckle*, necessitating precisely the same interpretation and construction of them, his claim too is preempted by § 301, and thus is controlled by federal law. Plaintiff argues that one component of the benefit formula in the collective bargaining agreement is made unlawful and thus unenforceable by virtue of a Michigan statute. That claim cannot be evaluated without considering the terms of the labor contract, and our resolution of the claim is therefore "inextricably intertwined with consideration of the terms of the labor contract" and preempted by federal law. Any contrary interpretation would undermine the rule under § 301 that CBAs be construed uniformly. Consequently, we must find that MCL 418.354(11) constitutes "[a] state rule that purports to define the meaning or scope of a term in a contract suit" and that it "therefore is pre-empted by federal labor law," *Allis-Chalmers*, 471 US at 210, because "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Lucas Flour*, 369 US at 104. MCL 418.354(11) is just such an "inconsistent local rule." Accordingly, we hold that plaintiff's claim is governed by federal law.

### D. THE MERITS OF THE CLAIM UNDER FEDERAL LAW

Plaintiff Kelley retired in 1992, during a time when the 1990 Letter of Agreement was in effect, prohibiting coordination of benefits. See *Arbuckle*, 499 Mich at 527-529. That placed

---

[12] As noted, the Court in *Arbuckle* was considering an argument under MCL 418.354(14), and did not also specifically address preemption in the context of MCL 418.354(11) because, as noted, it had already concluded that the plaintiff had abandoned that argument. However, the preemption analysis is the same with respect to the two statutory provisions. In other words, regardless of whether the claimed violation of state law relates to MCL 418.354(11) or MCL 418.354(14), resolution of that claim "is inextricably intertwined with consideration of the terms of the labor contract" where the application of the statute to the dispute " 'requires the interpretation of [the relevant] collective-bargaining agreement.' " [*Arbuckle*, 499 Mich at 537-538 (footnotes omitted).]

Kelley on precisely the same legal footing as the plaintiff in *Arbuckle*, who also retired while the 1990 Letter of Agreement was in force. *Id*. at 526-527. Applying federal decisional law regarding CBAs, *Arbuckle* held that "the intent of the parties and the specific language of the CBA at issue control whether a benefit vests." *Id*. at 539 (citation omitted). "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id*. at 540 (citation omitted). *Arbuckle* particularly relied on the Sixth Circuit's opinion in *Garbinski v General Motors*, 521 Fed Appx 549 (CA 6, 2013), which itself was based on the same CBAs and letters of agreement which were at issue in *Arbuckle*, and as noted, thus were the same provisions involved in this case. *Arbuckle* quoted *Garbinski*'s reference to language contained in each of the agreements providing that such agreement would remain in effect "until termination or earlier amendment of the" agreement. Thus, "the right to uncoordinated benefits had not vested because it was subject to an express durational limit." *Arbuckle*, 499 Mich at 539, citing *Garbinski*. "Indeed, as in the agreement before us, 'the clause placing limits on the right was in the *very same sentence* as the right it created[.]' It, thus, clearly informed persons covered by the agreement that 'the right was subject to modification.' " *Id*., citing *Garbinski* (ellipses omitted).

> By confining plaintiff's right to uncoordinated benefits to a specific period of time, the parties plainly intended to reserve the power to modify the policy regarding coordination at some point in the future. As a result, under the terms of the 1990 Letter of Agreement and the 1990 CBA, plaintiff's right to uncoordinated benefits was subject to modification and was thus a nonvested right. [*Id*. at 541.]

"Because nothing in the 1990 CBA itself, or the subsequent modifications thereto, demonstrates a commitment by defendant to provide plaintiff an unalterable right to uncoordinated benefits that would survive termination of the agreement," *id*. at 542-43, "[t]he agreement, therefore, did not create vested rights." *Id*. at 539-40. General Motors thus had "the authority to coordinate plaintiff's benefits[.]" *Id*. at 543. "Under a proper reading of the relevant agreements and the application of federal substantive law, defendant's subsequent coordination of plaintiff's workers' compensation benefits with his disability pension benefits did not violate the terms of plaintiff's disability pension plan, nor did it violate MCL 418.354."[13] *Id*. at 543.

As the present case involves the same agreements as in *Arbuckle*, application of federal law dictates the same result. Defendant's coordination of plaintiff's benefits was entirely lawful. Thus, the Commission was correct that defendant acted lawfully, but it reached that conclusion for the wrong reasons, by applying Michigan law. Nevertheless, we affirm the judgment, because "[a]lthough the lower court's decision was based on a different rationale, we will not reverse when the lower court reaches the correct result albeit for the wrong reason." *Norris v State Farm Fire & Cas Co*, 229 Mich App 231, 240; 581 NW2d 746 (1998).

---

[13] The Court's conclusion that General Motors' actions did not violate MCL 418.354 necessarily flowed from its determination that Michigan law was preempted and therefore played no role in the case.

## VI. CONCLUSION

Proper resolution of this case requires the application of federal law, specifically the federal common law applicable to collective bargaining agreements under § 301 of the LMRA. Under the applicable federal law, as found by our Supreme Court in *Arbuckle*, the intent of the parties to a CBA controls, and the parties to the various agreements at issue here did not intend to forever preclude defendant from coordinating benefits. Consequently, defendant's actions were entirely lawful, and defendant did not violate the law or a CBA by coordinating plaintiff's benefits. Therefore, we affirm the decision of the Michigan Compensation Appellate Commission. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Mark T. Boonstra